[No. 439. *En Banc.* July 17, 1922.]

*In the Matter of the Proceedings for the Disbarment
of* HULET M. WELLS.[1]

ATTORNEY AND CLIENT (7-1)—DISBARMENT—GROUNDS—CONVICTION
OF CRIME—MORAL TURPITUDE. The conviction of conspiracy to op-
pose and delay by force the authority of the President in executing
the resolution of Congress declaring war against Germany, and to
prevent by force the proper organization of the military and naval
forces of the United States, involves moral turpitude, within Rem.
Comp. Stat., § 139-14, authorizing the disbarment of an attorney
upon such a conviction.

Proceedings filed in the supreme court April 25, 1922,
for the disbarment of an attorney, upon the findings
of the state board of law examiners against the accused.
Judgment of disbarment.

*G. F. Vanderveer,* for accused.

*The Attorney General, O. R. Schumann, Assistant,*
and *Carroll Hendron,* for the state.

MITCHELL, J.—A complaint was filed with the state
board of law examiners against Hulet M. Wells, an
attorney at law, charging, among other things, that he
had been convicted in the Federal court of crimes in-
volving moral turpitude, and seeking his disbarment.
Upon a hearing had and evidence taken, the board has
made findings of fact and conclusions, finding as al-
leged in the complaint, and has recommended that he
be disbarred.

Section 139, Rem. 1915 Code (P. C. § 188), and § 14,
p. 414, ch. 126, Laws of 1921, both provide that an at-
torney or counsellor may be removed or suspended for
any one of a number of enumerated causes arising after
his admission to practice, the first of which is: "His

[1]Reported in 208 Pac. 25.

conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence.'' [Rem. Comp. Stat., § 139-14.] The record shows that Mr. Wells was convicted in the district court of the United States for the northern division of western Washington and was sentenced to the Federal prison at McNeils Island. Upon appeal therefrom to the circuit court of appeals, the judgment of the district court was affirmed. *Wells v. United States,* 257 Fed. 605, 168 C. C. A. 555.

The crimes of which he was convicted are shown by a condensed statement of the allegations of the indictment, found in the opinion of the circuit court of appeals, as follows:

''The plaintiffs in error, defendants below, were indicted by two counts, charged with conspiracy under section 6 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1089 [Comp. St. § 10170]). The first count charges that the defendants, on April 25, 1917, conspired together and with sundry other persons 'to oppose by force the authority of the United States, and by force to prevent, hinder, and delay the execution of a law of the United States; that is to say,' the defendants, naming them, did 'conspire, confederate, and agree together and with divers and sundry other persons to the grand jurors unknown, by force to prevent, hinder, and delay the execution of the joint resolution of Congress of the United States made and approved on the 6th day of April, A. D. 1917 [40 Stat. 1, c. 1], then and there declaring a state of war to exist between the United States and the Imperial German government, and directing and authorizing the President of the United States to employ the entire military and naval forces of the United States and the resources of the government to carry on war against the Imperial German government, and to then and there oppose by force the authority of the United States and the authority of the President of the United States in carrying into force and effect the provisions of the law then

existing which related to the armed military and naval forces of the United States, and to then and there by force prevent, hinder, and delay the execution of such acts of Congress enacted after the adoption of said resolution declaring war between the United States and the Imperial German government, hereinabove referred to, for the purpose of carrying into execution the plan and purpose of said resolution; it then and there being the purpose and intention of the said defendants, and each of them, together with such other persons as they might, or could, induce, incite, and encourage to co-operate with them in their plan, and to join their said conspiracy to oppose by force the authority of the United States and to prevent, hinder, and delay the execution of the said joint resolution of Congress declaring war hereinabove referred to, together with such other laws as then existed or as might thereafter be enacted in pursuance of said joint resolution of Congress declaring war, and it then and there was the further purpose, plan, and object of the said defendants, and each of them, to prevent by force the proper organization of armed military and naval forces of the United States, and the proper disposition of said force under and by virtue of the authorities of the United States in conducting said war so declared and resolved for by the said Congress of the United States.'

"The allegations of the second count are of similar import, except that they are more specific as to the laws, the execution of which it is alleged the defendants conspired by force to prevent, hinder, and delay. These laws, as specified, are: First, the joint resolution of the Senate and House of Representatives declaring war between this country and Germany; second, the act of Congress approved June 3, 1916 (39 Stat. 166, c. 134), entitled 'An act for making further and more effectual provision for the national defense, and for other purposes,' special reference being had to sections 57, 59, and 111 of said act (Comp. St. §§ 3041, 3043, 3045); and, third, section 4 of the act of Congress approved January 21, 1903, entitled 'An act to pro-

mote the efficiency of the military and for other purposes' (32 Stat. 775, c. 196), as amended by section 3 of the act of Congress approved May 27, 1908, entitled 'An act to further amend the act entitled "An act to promote the efficiency of the militia and for other purposes," approved January 21, 1903' (35 Stat. 399, c. 204). And in relation to these laws it is further alleged: 'It then and there being the purpose and intention of the said defendants, and each of them, together with such other persons as they might or could induce, incite, and encourage to co-operate with them in their plan, and to join their said conspiracy, by force to prevent hinder, and delay the duly authorized officers, agents, and representatives of the United States from putting into effect and executing the said laws hereinabove mentioned, and from calling forth and bringing into the military service of the United States persons subject and liable to service thereunder under the provisions of said laws, and to prevent, hinder, and delay by force the mobilization, organization, control, direction, and disposition of the armed military and naval forces of the United States in conducting said war against the Imperial German government.' "

In opposition to the recommendation of disbarment it is contended, (1) that one cannot conspire to violate or obstruct the enforcement of a law until after the law is enacted, and that the transactions referred to in the indictment occurred in April, 1917, while the selective service law enacted by Congress pursuant to and for carrying out the purpose of the joint resolution of Congress that a state of war with Germany already existed was subsequent to the happening of the acts upon which the conviction was had, and (2) that there was no moral turpitude involved in the acts for which the conviction was had. Both of these contentions are answered, we think, by the language of the indictment, the law and the views of the circuit court of appeals.

That court, in discussing the legal effect of the joint resolution of Congress, upon reason and authority, said: ''We think that the resolution having the effect of law must be considered a law,'' and further stated:

''Referring to the objection that the indictment fails to state definitely in what manner the offenses were to be committed, it is our opinion that the indictment itself, in both counts, completely answers it. We need not here repeat the language. It will be sufficient to call attention to the allegations of the purpose and intention of the alleged conspirators, which were to oppose by force the authority of the United States, to prevent, hinder, and delay the execution of the joint resolution of Congress declaring war, and to prevent by force the proper organization of armed military and naval forces of the United States, etc. This as to the first count. The second is equally explicit.'' (Wells v. United States, supra.)

And then, speaking of the conduct of Mr. Wells and his co-conspirators, of which it is alleged in the indictment that he personally contributed to the expense of printing and caused to be printed a circular which he assisted in distributing, by which it was alleged to be the intention of the conspirators to oppose by force the authority of the United States, to prevent, hinder and delay the execution of the joint resolution of Congress declaring war, and to prevent by force the proper organization of the armed military and naval forces of the United States, etc., the circuit court of appeals said:

''Attention should be directed more particularly to the wording of the latter clauses of the circular beginning with 'Resist! Refuse!' It will thus be seen that the language urging resistance to conscription is very strong, breathing defiance to the constituted authorities, and, considering along with it the energy displayed in procuring the adoption and wide distribution of the circular, there would seem to be scope for

reasonable men to draw the inference that it was intended, by those who were instrumental in its preparation and distribution, that force should be employed, if requisite, against the carrying into effect of the declaration of war by Congress, in pursuance of which Congress was proceeding to put the Selective Draft Act upon the statute, and to oppose by force the authority of the President in putting into execution the law respecting the militia, as referred to in the indictment, and the laws themselves carrying such authorization.'' (Wells v. United States, supra.)

The transactions did not partake of the nature of simply expressing the views of a conscientious objector, nor of discussing, in days of tranquility, the cause of war or no war, but they were overt acts, alleged and proven to the satisfaction of the jury, for the carrying out of an alleged conspiracy to resist and refuse by force, if necessary, the demands of the government already in a state of war, as declared by its properly constituted authorities.

It appears, therefore, that, in addition to the allegations of the indictment showing specific acts of unquestioned moral turpitude, upon which verdict and judgment of conviction were had, we have the affirmance by the circuit court of appeals of that conviction and of the instructions of the trial court, from which the conclusion is inevitable that the purpose of the accused, through the conspiracy with which he was charged, was to oppose, hinder and delay by force, if need be, the authority of the President in putting into execution the joint resolution of Congress declaring a state of war, and to prevent by force the proper organization of the armed military and naval forces of the United States—crimes that were complete and independent of the subsequent enactment of the selective service law. The charges were not simply that he

formed the intention to do those things, but that he also committed acts to carry out his designs. That they involved moral turpitude as spoken of in the statute, there can be no question.

It is therefore the judgment of this court that the license heretofore granted Mr. Hulet M. Wells to practice law in this state be revoked and his name stricken from the rolls.

All concur.