FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___AUG 2 2 2013

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Aug. 22, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Disciplinary Proceeding Against<br><br>THOMAS F. McGRATH, an Attorney at Law. | NO. 201,115-2 (WSBA #1313)<br><br>EN BANC<br><br>Filed _____ AUG 2 2 2013 |

STEPHENS, J.—Thomas F. McGrath appeals the unanimous recommendation of the Washington State Bar Association (WSBA) Disciplinary Board (Board) that he be disbarred. The hearing officer found that McGrath willfully and intentionally filed fraudulent documents in the bankruptcies of his wife and her corporation, presented his own false creditor claims, and used his trust account to hide assets from his and his wife's creditors in violation of federal law and Washington's Rules of Professional Conduct (RPC).

McGrath argues that his acts did not violate the law or the RPCs and asks us to reverse the hearing officer's credibility determinations and adopt his version of the facts. The hearing officer's credibility determinations and findings of fact are supported by substantial evidence, and his conclusions of law are correct. The

record supports the finding of multiple aggravating factors and no mitigating factors. Disbarment is the presumptive sanction and is not disproportionate. We accept the Board's unanimous recommendation and disbar McGrath.

## FACTS AND PROCEDURAL HISTORY

McGrath was admitted to practice in the state of Washington in 1970 and did primarily creditor collection work early in his career. He later worked in the mortgage business as a loan officer and then moved into bankruptcy practice, representing debtors and creditors. By 2009, McGrath's practice focused on consumer bankruptcy and creditor collections.

The events leading up to this discipline action are familiar to the court in light of McGrath's 2012 discipline action. *In re Disciplinary Proceeding Against McGrath*, 174 Wn.2d 813, 280 P.3d 1091 (2012) (*McGrath* II). They center around McGrath's representation of his wife, Melinda Maxwell, and her corporations, including Chiropractic Wellness Center at Capitol Hill P.S. Inc. and Chiropractic Wellness Center, Inc. (collectively CWC). McGrath represented Maxwell in forming these corporations. The two married in 2001, and since 2000, McGrath has represented Maxwell and CWC in various matters and has served as CWC's corporate secretary and registered agent.

### The Ellison Litigation

McGrath and cocounsel John Peick represented Maxwell and CWC in litigation against a former CWC employee, chiropractor Katherine Ellison, that

began in 2005. CWC sued Ellison when she left her job and allegedly took patients with her. Ellison raised discrimination, equal pay act, and other tort claims in her counterclaim. The trial court dismissed CWC's claims on summary judgment and the jury found for Ellison on her counterclaims in July 2008. In October, the court entered judgment that exceeded $500,000 against Maxwell, CWC, and the McGrath/Maxwell marital community. In November 2008, McGrath told Ellison's lawyer that he would declare bankruptcy if Ellison tried to collect.

Complaints about McGrath's conduct in discovery during the Ellison litigation resulted in his most recent discipline.[1] The hearing officer found that McGrath "intentionally and repeatedly obstructed and delayed litigation by failing to respond to discovery requests" and falsely certified that he had made a reasonable inquiry into the accuracy of responses he did give. *McGrath* II, 174 Wn.2d at 815. The Board recommended that he be suspended from practice for 18 months. *Id.* at 816-18. We agreed, finding that McGrath's refusal to obey court orders and perform discovery obligations was "egregious, intentional, and in bad faith." *Id.* at 833.

Although our July 12, 2012 opinion was not final at the time of the 2011 disciplinary hearing in this case, the WSBA asks us to take judicial notice of it

---

[1] McGrath also previously faced disciplinary proceedings in 1982 when he was disbarred following a conviction for second degree assault with a deadly weapon. *See In re Disciplinary Proceeding Against McGrath*, 98 Wn.2d 337, 655 P.2d 232 (1982) (*McGrath* I). He was readmitted in 1993.

under Evidence Rule (ER) 201. McGrath does not object, and this prior discipline is not subject to reasonable dispute. ER 201(b), (f). Consequently, we take judicial notice of McGrath's most recent disciplinary action. *See In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 83, 217 P.3d 291 (2009) (*Marshall* II) (taking judicial notice of prior discipline that became final after the hearing).

*Concealment of Funds and Fraudulent Encumbrances*

After CWC's claim against Ellison was dismissed, but before jury verdict or entry of judgment for Ellison, McGrath took steps the hearing officer found were intended to frustrate Maxwell's and CWC's creditors, particularly Ellison. The day after the Ellison verdict, McGrath filed promissory notes in favor of himself and his law firm, securing these notes by recording a deed of trust against Maxwell's condominium and a Uniform Commercial Code (UCC) financing statement against CWC's property, including its accounts and receivables. One set of notes claimed that Maxwell and CWC owed McGrath and his law firm $75,000 for his work in the Ellison litigation. Another claimed that Maxwell owed $185,500 to Olympic Mortgage Lending Corporation (Olympic), a d/b/a of a corporation wholly owned by McGrath that he falsely listed as having his ex-wife's home address.

At this time, McGrath also began to shift personal and community funds into his trust account, which had the effect of concealing the funds from the trustee and

creditors. In November 2007, McGrath withdrew $17,000 from a personal account and deposited it into his trust account, using the funds later to pay Maxwell's legal bill to his cocounsel in the Ellison matter. In March and April 2008, McGrath deposited checks from his personal medical insurance carrier for $5,200 and $1,175, respectively, into his trust account. And in June 2008, McGrath deposited the proceeds from the sale of a boat owned by his and Maxwell's LLC into his trust account, using some of these funds to pay Maxwell's debts and marital debts and transferring the rest to his office operating account.

*Misuse of Trust Account*

Ellison hired attorney Sarah Atwood in February 2009 to collect her judgment. In June 2009, Atwood netted approximately $22,000 by garnishing bank accounts belonging to Maxwell, CWC, McGrath, McGrath's law firm, and related entities. However, Atwood did not garnish McGrath's trust account.

In response, McGrath and Maxwell began to use McGrath's trust account as the primary personal and corporate account for Maxwell and CWC. For example, in early July 2009 McGrath and Maxwell deposited more than $18,000 of CWC receivables into the trust account. Maxwell also deposited over $8,000 from her personal investment account and used those funds to pay employees, attorney fees, and other expenses. That same month, Maxwell signed McGrath's name to six payroll checks paid on the account, totaling more than $5,000. She later signed

McGrath's name to six more checks totaling more than $4,000. Maxwell also paid the mortgage on her condominium from this account.

After filing the bankruptcies, as described below, McGrath continued to allow Maxwell and CWC to transfer personal, community, and corporate funds into his trust account, and to pay obligations directly from that account without disclosing these transfers or funds to the bankruptcy trustee. For example, in August 2009 Maxwell signed McGrath's name to six payroll checks payable on his trust account, totaling more than $4,000. She also deposited checks into the trust account from her insurer for more than $70,000 to cover damage to her condominium.

*False and Misleading Bankruptcy Filings*

In late July 2009, McGrath obtained an automatic stay of all collection efforts by filing a chapter 7 bankruptcy for Maxwell and a chapter 11 bankruptcy for CWC. A debtor filing for bankruptcy protection has a duty to fully disclose all bankruptcy assets, and the debtor's lawyer must certify that the representations of these assets are true and correct to the best of the lawyer's knowledge after reasonable inquiry. *See* 11 U.S.C. § 707(b)(4)(C), (D); FED. R. BANKR. P. 9011(b). When the debtor's attorney is also the debtor's spouse, the attorney has an additional duty to disclose and turn over assets of the marital community.

However, the bankruptcy filings submitted by McGrath on behalf of Maxwell and CWC contained numerous misstatements and omissions of material

information. For example, McGrath failed to disclose that he was Maxwell's spouse or an officer of CWC or that Olympic was wholly controlled by his corporation. These omissions were significant because transfers to "insiders" come under special scrutiny in bankruptcy proceedings. *See* 11 U.S.C. § 101(31) (defining the term); 11 U.S.C. § 547(b)(4)(B) (allowing a trustee to avoid transfers made to insiders within one year preceding bankruptcy, rather than only 90 days). The court found that McGrath was an "insider" to both bankruptcies and had multiple conflicts of interest as Maxwell's spouse, a CWC officer, and a secured creditor of both estates, and required Maxwell to find new counsel.

McGrath also failed to disclose many assets, including assets Maxwell and CWC had shifted into his trust account. He failed to disclose the sale of a CWC clinic for $50,000 within one year of the filing, the sale of Maxwell's jewelry, the sale of a boat, or the deposit of these funds into his trust account. He failed to disclose Maxwell's transfers from her personal securities account into his trust account or the insurance claim for Maxwell's condominium—a claim that was a "key asset" of the estate. Transcript (TR) at 781.

Because of these omissions, misstatements, and fraudulent encumbrances, the paperwork McGrath filed painted a false picture of bankruptcy estates with limited assets that were either exempt or fully encumbered. If Atwood had not asked the trustee to take a closer look, Maxwell's and CWC's bankruptcies could have proceeded jointly as a "no asset" case and been discharged automatically 60

days after the creditors meeting. Instead, the trustee sought discovery, and McGrath resisted these efforts to such an extent—failing to produce requested documents and instructing Maxwell to leave an examination while being questioned—that the court sanctioned him for bad faith. Even after he was sanctioned, McGrath failed to produce all the documents ordered by the court.

The trustee eventually recaptured most of the undisclosed insurance proceeds McGrath had transferred to third parties. The trustee was also able to sell Maxwell's condominium and collected a total amount between $200,000 and $250,000. Ellison received just $150,000 of her $500,000 judgment. TR at 206. An attorney for the trustee reported spending "vastly more" resources on this case than on a normal bankruptcy case and commented that the bankruptcy system would simply not function if all cases proceeded as this one did. TR at 320.

*Attempted Ex Parte Contact*

Finally, McGrath attempted ex parte contact with United States Bankruptcy Court Judge Karen Overstreet after he was removed from the Maxwell and CWC cases. He sent the judge a CD (compact disc) containing audio files from the examination he improperly instructed Maxwell to leave and a letter asking the judge to listen to it. McGrath did not copy the other parties on this attempted communication. The package was intercepted and returned by the judge's assistant.

*Disciplinary Proceedings*

In June 2011, the WSBA filed an amended formal complaint charging McGrath with nine counts of misconduct:

Count 1 — By drafting, filing, making, and presenting false claims and accounts and/or making false statements about Melinda Maxwell's and CWC's assets, property, and bankruptcy estates to the court, trustee and/or creditors, by receiving, transferring, secreting, and concealing debtors' property from the court, trustee and/or creditors, and/or by disobeying his obligations as an attorney under the bankruptcy rules, Respondent violated RPC 8.4(c) (Conduct Involving Dishonesty), RPC 8.4(d) (Conduct Prejudicial to the Administration of Justice), RPC 4.1 (Truthfulness in Statements to Others), and/or RPC 3.3(a) (Candor Toward the Tribunal).

Count 2 — By intentionally making and using false statements, accounts, and claims against Maxwell's and CWC's debtor estates, and by fraudulently receiving, transferring, and/or concealing property or assets belonging to debtors' estates, and/or by conspiring with Melinda Maxwell and/or unknown others to do so in order to defraud the bankruptcy court, the trustee and/or creditors, Respondent violated RPC 8.4(b) (Criminal Conduct) through violation of 18 U.S.C. § 152, subsections (1) through (7) (Concealment of Assets, False Oaths and Claims), 18 U.S.C. § 157 (Bankruptcy Fraud), and/or 18 U.S.C. § 371 (Conspiracy) and by committing such felonies, and [Respondent violated] RPC 8.4(d) [(Conduct Prejudicial to the Administration of Justice)].

Count 3 — By intentionally commingling lawyer funds and funds belonging to his marital community, Maxwell, and/or CWC, with client funds, Respondent violated RPC 1.15A(h)(1) and RPC 8.4(d).

Count 4 — By using his trust account to fraudulently conceal funds belonging to his marital community, Maxwell, and/or CWC, Respondent violated RPC 8.4(c).

Count 5 — By failing to maintain complete and/or accurate trust account records, Respondent violated RPC 1.15A(h)(2), RPC 1.15B(a)(1), RPC 1.15B(a)(2), and/or RPC 1.15B(a)(8).

Count 6 — By failing to reconcile his check register balance to his client ledgers, Respondent violated RPC 1.15A(h)(6).

Count 7 — By withdrawing funds or allowing funds to be withdrawn from his trust account by writing a check made payable to "cash," Respondent violated RPC 1.15A(h)(5).

Count 8 — By allowing a non-lawyer to issue and/or sign checks from his trust account, Respondent violated RPC 1.15A(h)(9).

Count 9 — By communicating or attempting to communicate ex parte on one or more occasions with Bankruptcy Court Judge Karen Overstreet without authorization to do so by law or court order, Respondent

violated RPC 3.5(b) (Impartiality and Decorum of the Tribunal), RPC 8.4(a) (Prohibiting Violation or Attempted Violation of the RPC), and/or RPC 8.4(d).

Am. Findings of Fact, Conclusions of Law and Hr'g Officer's Recommendation (AFFCL) at 2-3. The disciplinary hearing took place in October and November 2011. *Id.* at 1. The hearing officer entered his amended findings of fact, conclusions of law, and recommendation on April 13, 2012. *Id.* He rejected McGrath's innocent explanations for his conduct and concluded that the WSBA proved each of the nine counts by a clear preponderance of the evidence. *Id.* ¶¶ 112-18. He found six aggravating factors and no mitigating factors and recommended disbarment. *Id.* ¶¶ 120-41. A unanimous Board adopted the hearing officer's decision. Disciplinary Board Order Adopting Hr'g Officer's Decision (Board Order) at 1 n.1. McGrath appealed.

## ANALYSIS

This court has the ultimate responsibility for disciplining lawyers. ELC 2.1; *In re Disciplinary Proceeding Against Van Camp*, 171 Wn.2d 781, 797, 257 P.3d 599 (2011). The WSBA must prove misconduct by a clear preponderance of the evidence. *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 209, 125 P.3d 954 (2006). This standard requires greater certainty than under a simple preponderance of the evidence, but not proof beyond a reasonable doubt. *Id.*

McGrath assigns error to many of the hearing officer's findings of fact and conclusions of law and to the Board's adoption of his recommendation. Specifically, he contends that (1) many of the hearing officer's findings of fact are

erroneous, (2) the hearing officer and Board erred in concluding he violated 18 U.S.C. § 152, (3) the hearing officer and Board erred in concluding he violated RPCs, and (4) the hearing officer and Board erred by finding that the appropriate sanction was disbarment. Opening Br. of Resp't McGrath (Opening Br.) at 2. We consider each in turn.

A. Findings of Fact

We give great weight to the hearing officer's findings of fact and will uphold those findings so long as they are supported by "substantial evidence." *In re Disciplinary Proceeding Against Simmerly*, 174 Wn.2d 963, 981, 285 P.3d 838 (2012). Evidence is "substantial" if it is sufficient "'to persuade a fair-minded, rational person of the truth of a declared premise.'" *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007) (*Marshall* I) (internal quotation marks omitted) (quoting *In re Poole*, 156 Wn.2d at 209 n.2).

Much of McGrath's briefing attacks what he characterizes as inaccuracies in the hearing officer's findings of fact. McGrath is wrong about many of these asserted errors. For example, his claims about the date of the sale of a boat and the total size of the Ellison judgment are contradicted by the record. However, several of the errors McGrath identifies are real, albeit trivial. For example, the hearing officer erroneously identified two promissory notes executed in payment for the CWC clinic, when in fact there was only one. The hearing officer entered the incorrect date on a nunc pro tunc order and on a reference to a letter. Additionally,

the hearing officer's citation to the record in certain findings is inaccurate. McGrath concedes that these are insignificant errors, but urges us to see them as evidence that the findings "were not drafted with great care" and to either reject the hearing officer's findings on whole or subject them to closer than usual scrutiny. Opening Br. at 9-10, 19.

In all disciplinary proceedings, the court should closely review the entire disciplinary record. *In re Disciplinary Proceeding Against Burtch*, 162 Wn.2d 873, 895, 175 P.3d 1070 (2008). However, we do not comb the hearing officer's findings for ministerial errors. Instead, we ask whether there is "substantial evidence" that "reasonably supports" the hearing officer's findings and conclusions. *In re Simmerly*, 174 Wn.2d at 981; *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004). We review each of the findings for substantial evidence.

*1. Counts 1 and 2*

The hearing officer found that McGrath made false statements and oaths in Maxwell's and CWC's bankruptcy. He identified McGrath's failure to identify himself as a multilevel bankruptcy insider and to identify himself as Maxwell's spouse. He also found that McGrath filed fraudulent notes and encumbrances, and drafted and presented false claims against these fraudulent notes, and that these actions were intentional. There is substantial evidence to support these findings.

### a. Fraudulent Encumbrances and Claims

McGrath prepared notes in favor of himself and Olympic and secured them by recording a deed of trust against Maxwell's condominium and a UCC financing statement against CWC's property. One set of notes and deed of trust purported to represent legal services debt owed by Maxwell and CWC to McGrath. McGrath listed this debt as a secured claim in both bankruptcies and never amended the filings to remove them. He filed a proof of claim based on these documents. Another note and deed of trust were in the name of Olympic, McGrath's d/b/a mortgage company. The hearing officer found that these notes and securing documents did not represent real debts but were instead "designed to mislead and discourage Ellison and other creditors" from making claims against the secured property. AFFCL ¶ 13. He also found that McGrath had intentionally filed a false claim.

McGrath insists there are innocent explanations for these encumbrances that the hearing officer overlooked. Credibility determinations underlie many of the hearing officer's findings, and McGrath asks us to reject them in favor of his version of events. He concedes that a hearing officer's credibility findings are entitled to "great weight." *In re Van Camp*, 171 Wn.2d at 811; *see In re Simmerly*, 174 Wn.2d at 981; *Marshall* I, 160 Wn.2d at 330 (citing *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 735, 122 P.3d 710 (2005)). However, McGrath urges that the findings in this case lack "specificity" and argues

that a hearing officer's general statement about credibility "is worthless to the reviewer." Opening Br. at 5. McGrath is wrong, and we reject his version of these events.

The hearing officer evaluated McGrath's innocent explanations for his actions over seven days of testimony and after considering hundreds of exhibits and dozens of hours of witness testimony. Each of his assessments of credibility pertains to a specific claim McGrath made during the hearing, and most reference specific testimony. The hearing officer's assessments are entitled to "considerable deference" precisely because he heard these arguments while observing McGrath's demeanor and could evaluate them against opposing testimony and other evidence. *In re Disciplinary Proceeding Against Conteh*, 175 Wn.2d 134, 143, 284 P.3d 724 (2012).

The hearing officer found that Maxwell and CWC did not owe McGrath for legal services and that the notes were designed to hinder Ellison's collection efforts. The record shows that McGrath informed Maxwell in 2007 that he was freely contributing these services and would never charge her or CWC for them. Ex. 6010. McGrath argues, as he did at the hearing, that he simply changed his mind about being paid. The hearing officer found that McGrath's effort to minimize the significance of the 2007 e-mail "was not credible." AFFCL ¶ 14. He found that McGrath prepared false legal billing statements in 2009 to support his

claim of legal debts dating back to 2005 and rejected McGrath's testimony that he prepared the invoices contemporaneously.

The hearing officer also rejected McGrath's explanation for the $185,500 note and deed of trust against Maxwell's condominium in favor of McGrath's d/b/a Olympic. Olympic did not lend Maxwell or CWC any money. McGrath claims that the note and encumbrance were part of a legitimate financing tool called "table funding," which provides a potential lender with a secured position. Opening Br. at 14-18, App. B. McGrath made this "table funding" argument before the hearing officer and the Board, who did not find it credible. McGrath admitted he never applied for a loan on Maxwell's behalf and knew Maxwell could not in fact obtain one due to her financial situation. We will not set aside the hearing officer's findings "based simply on an alternative explanation or versions of the facts previously rejected by the hearing officer and Board." *Marshall* I, 160 Wn.2d at 331 (citing *In re Poole*, 156 Wn.2d at 212 (citing *In re Disciplinary Proceeding Against Romero*, 152 Wn.2d 124, 133, 94 P.3d 939 (2004))). McGrath gives this court no reason to reject the hearing officer's findings as to these notes and encumbrances, and we decline to do so.

### b. False Statements and Filings

The hearing officer found that McGrath submitted false information in his bankruptcy filings, primarily by failing to disclose assets. The record supports these findings. For example, McGrath failed to disclose the proceeds from the sale

of the CWC clinic, as he was required to do. The hearing officer did not find McGrath's explanation for the omission credible. McGrath underreported proceeds from the sale of Maxwell's jewelry. The hearing officer rejected McGrath's innocent explanations. McGrath failed to disclose the proceeds from a 2008 sale of a boat. The hearing officer adopted the trustee's version of events over McGrath's. Finally, McGrath failed to disclose more than $80,000 in insurance claims for damage to Maxwell's condominium, a bankruptcy asset. The hearing officer rejected McGrath's innocent explanation for this omission.

### c. Mental State

As he did at the hearing, McGrath concedes "errors" in his bankruptcy filings but claims that his wife Maxwell entered much of this information and was the source of many of these mistakes and omissions. Opening Br. at 23-24. McGrath also argues here, as at the hearing, that he and Maxwell rushed to file these bankruptcy petitions before a 2009 deposition and that any errors and omissions were inadvertent. The hearing officer rejected these arguments as not credible. McGrath's claim that Maxwell prepared the filings conflicts with his testimony at a 2010 deposition. Ex. 6009. And despite McGrath's claim that he would have amended the rushed filings had he known of any errors, he never removed his fraudulent claims or disclosed his concealed transfers, even after they were revealed. McGrath's claim that he was too busy to amend the filings is not only incredible, it falls far below the duty of reasonably diligent inquiry in all

representations made to the bankruptcy court. *See* 11 U.S.C. § 707(b)(4)(C), (D); FED. R. BANKR. P. 9011(b).

The hearing officer concluded that McGrath acted intentionally when he transferred and concealed bankruptcy assets, prepared and filed false bankruptcy filings, and filed false claims against the estates. McGrath rejects this conclusion, arguing that there is no substantive evidence to support it and that his actions were "the product of hard fought litigation." Opening Br. at 54. The hearing officer's conclusion is supported by the record. The WSBA's bankruptcy expert testified to the presence of many bankruptcy "badges of fraud" indicating McGrath's intent to deceive, including the transfer of assets to his trust account and failure to disclose estate assets in his filings. TR at 1344-48, 1378-88. The hearing officer agreed, drawing the reasonable inference from this circumstantial evidence that McGrath's filings "were false, withheld material information, and concealed assets with the intent to hinder, delay or defraud the court, trustees and creditors." AFFCL ¶¶ 38, 43-56. McGrath asks us to reject this conclusion because "[i]t is ludicrous" to conclude that he or his wife intended to conceal their assets from a determined creditor. Opening Br. at 25. McGrath did not persuade the hearing officer with this argument, and we do not accept it here. We affirm the hearing officer's determination that McGrath intentionally transferred and concealed property, made false statements, and filed false bankruptcy filings and claims, per counts 1 and 2.

### 2. Counts 3 and 4

The hearing officer found that McGrath commingled personal and client funds and intentionally concealed bankruptcy assets in his trust account. The record contains abundant examples of commingling of funds belonging to Maxwell and CWC. The record also supports the hearing officer's finding that McGrath deposited funds, in which he had an interest, into his trust account, and we affirm both findings.

### 3. Counts 5, 6, 7, and 8

The hearing officer found that McGrath failed to maintain complete or accurate trust account records or to reconcile his check register against his account balance. The record substantially supports these findings. Until 2009, McGrath failed to keep any record of the amounts deposited or disbursed on behalf of particular clients, and he failed to reconcile his monthly account statements with these incomplete records. The hearing officer's other findings related to trust account misuse are also supported by substantial evidence. He found that McGrath wrote a check payable to "cash" from his trust account. He found that McGrath allowed Maxwell, who is not a lawyer or authorized signatory, to write checks from the account. The record shows that Maxwell used deposit slips to make deposits of personal and CWC funds, wrote checks, and signed McGrath's name on multiple checks for CWC payroll. We affirm the hearing officer's findings that McGrath failed to maintain accurate trust account records, improperly paid funds

from his trust account, and allowed a nonlawyer to issue checks from this account, per counts 5, 6, 7, and 8.

### 4. Count 9

The hearing officer found that McGrath attempted ex parte communications with United States Bankruptcy Court Judge Karen Overstreet. This finding is supported by the record. After he was removed from the Maxwell and CWC cases, McGrath sent the judge a CD containing audio files from his wife's examination and a letter asking her to listen to it. The judge's assistant returned the package with a letter that advised McGrath such ex parte contacts were prohibited by federal bankruptcy rules. *See* FED. R. BANKR. P. 9003(a). McGrath notified the other parties that he was sending the CD and letter but did not send a copy to the other parties or file it with the clerk, nor was he authorized to contact the judge "by law or court order." RPC 3.5(b). His attempt to contact the judge was unauthorized and was made without the full knowledge of, and outside the presence of, opposing counsel. We affirm the hearing officer's determination that McGrath's attempted ex parte contact negligently risked affecting the outcome of the proceeding and injuring the legal system, the court, the trustee, and the creditors, per count 9.

### B. Conclusions of Law

The hearing officer concluded that the WSBA had proved all nine counts against McGrath by a clear preponderance of evidence. AFFCL ¶¶ 112-18. We

review conclusions of law de novo and will uphold them if they are supported by the findings of fact. *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008) (citing *Marshall* I, 160 Wn.2d at 330). McGrath's disagreements with the hearing officer's conclusions rest almost exclusively on disagreements about his findings of fact. Because the hearing officer's findings are supported by substantial evidence, we uphold the conclusions that flow from them. However, McGrath raises several distinct challenges to the hearing officer's conclusions of law, which we review below.

*1. Violation of 18 U.S.C. § 152*

The hearing officer found that by intentionally making false statements and claims against Maxwell's and CWC's estates, and by fraudulently transferring, receiving, and concealing bankruptcy assets, McGrath committed felonies in violation of 18 U.S.C. § 152. AFFCL ¶¶ 38, 39, 42-47, 49-51, 59, 60, 65. He concluded that by committing these acts, McGrath violated RPC 8.4(b) (criminal conduct) and RPC 8.4(d) (conduct prejudicial to the administration of justice). AFFCL ¶ 112.

The federal bankruptcy fraud statute at issue criminalizes, inter alia, the concealment or fraudulent transfer of bankruptcy assets, presentation of a false claim against an estate, and the making of any false statement or declaration under penalty of perjury if the concealment or misstatement is material and done "knowingly and fraudulently." 18 U.S.C. § 152(1)-(7). McGrath concedes that his

bankruptcy filings contained numerous material misstatements and omissions. However, he argues that the false statements in these filings did not violate the statute because he did not act knowingly and with the intent to defraud.

Instead, McGrath claims that the mistakes were the result of negligence because he prepared the filings at "the eleventh hour" to meet a deadline and planned to later amend them. Opening Br. at 24-26, 43-44. The hearing officer is not required to accept McGrath's version of events, and he could reasonably infer from McGrath's failure to later amend the filings that he acted "knowingly and fraudulently" to hinder collection efforts. We find by a clear preponderance of evidence that McGrath violated this statute and affirm the hearing officer's conclusion that McGrath's willful and intentional acts violated 18 U.S.C. § 152, RPC 8.4(b), and 8.4(d), per count 2.

### 2. Disclosure of Boat Sale Proceeds

The hearing officer also found that McGrath violated 18 U.S.C. § 152 by intentionally failing to report proceeds from the sale of a boat. McGrath and Maxwell are the sole owners of M&T Enterprises LLC (M&T). In 2008, M&T sold a Bayliner boat and McGrath deposited the proceeds in his trust account. McGrath failed to identify these proceeds in Maxwell's bankruptcy filings. The hearing officer found that McGrath's failure to identify these assets in the bankruptcy filings was fraudulent and willful, in violation of 18 U.S.C. § 152.

McGrath argues that the Bayliner was owned by the separate legal entity of M&T, that the proceeds from its sale did not belong to the marital community, and therefore he had no duty to disclose them. Opening Br. at 30, 33-34, 48-49. The hearing officer found that this argument was not credible because McGrath earlier testified that this boat was community property. *See* AFFCL ¶ 9. McGrath argues that the basis for the hearing officer's credibility finding was in error because he confused two boats held by M&T: a Bayliner, which M&T sold, and a Stevens, which it did not. *See* Answering Br. of WSBA (Answering Br.) at 39 n.17 (explaining the hearing officer's mistake). However, McGrath conceded that the Stevens was community property and that his failure to declare it as such "was obviously an error." TR at 1220; *see* AFFCL ¶ 64 (rejecting this explanation). The Bayliner stands in the same relation to the McGrath/Maxwell marital community as the Stevens, and McGrath does not persuasively explain why one was community property and one was not.

Moreover, even if we accepted McGrath's argument that the assets held by M&T were not personal community property, McGrath still had a legal obligation to report these assets to the bankruptcy court. Under Washington law, an LLC (limited liability company) member has no ownership interest in specific LLC property, and an LLC's assets—such as M&T's boats—are not part of the estate. RCW 25.15.245(1); *see In re Campbell*, 475 B.R. 622, 631-32 (Bankr. N.D. Ill. 2012) (applying the analogous Illinois statute). However, the bankruptcy code

defines the debtor's "estate" expansively, to include "all legal or equitable interests . . . in property" at the time of filing. 11 U.S.C. § 541(a)(1). Membership interests in an LLC, like those McGrath and Maxwell held in M&T, are assets of the bankruptcy estate that McGrath had an obligation to fully and fairly disclose. Ex. 100, at 3 (certifying that the disclosure is "true and correct"); 11 U.S.C. § 707(b)(4)(C), (D) (imposing a duty of reasonable investigation); FED. R. BANKR. P. 9011(b) (same). McGrath disclosed that Maxwell held a 50 percent interest in M&T, but by estimating the value of this interest at just $10, he concealed the value of the Stevens boat and the proceeds from the sale of the Bayliner boat, both of which belonged to M&T. Ex. 100, at 19. McGrath had a duty to disclose the full value of Maxwell's holdings in M&T, which includes the value of these boats. We affirm the hearing officer's conclusion that McGrath's bankruptcy filings willfully and fraudulently concealed estate assets in violation of 18 U.S.C. § 152, per count 2.[2]

---

[2] The WSBA also argues that M&T was an "alter ego" for McGrath and Maxwell, and therefore the hearing officer could reasonably infer that the bankruptcy court was entitled to disregard the LLC's corporate form to avoid fraud. Answering Br. at 38 (citing *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 166 Wn. App. 683, 692, 271 P.3d 925 (2012)). The record supports this argument. In Washington, when one person "'so dominates and controls a corporation that such corporation is [the person's] *alter ego*, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.'" *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (quoting *Pohlman Inv. Co. v. Virginia City Gold Mining Co.*, 184 Wash. 273, 283, 51 P.2d 363 (1935)). McGrath and Maxwell were sole owners of M&T, which had no assets other than these boats. They were personal guarantors on the boat mortgages and paid M&T expenses through McGrath's trust account rather than through a separate business account. When McGrath sold the Bayliner, he deposited the proceeds into his trust account and used these funds to pay his and Maxwell's individual obligations. The hearing officer could reasonably disregard M&T's status as a legal

### 3. Commingling Client and Lawyer Funds

The hearing officer found that McGrath commingled personal and client funds in his trust account. He concluded that these acts violated RPC 1.15A(h)(1). McGrath argues that this was error because RPC 1.15A(h)(1)(ii) permits a lawyer to deposit funds "belonging in part to a client," and these funds belonged in part to Maxwell and CWC, his clients. Therefore, McGrath asserts that Maxwell and CWC were entitled to deposit funds into his trust account regardless of whether these funds were related to a specific representation. Opening Br. at 30-39, 52-53. McGrath raised this argument at the hearing, claiming his clients can deposit and withdraw funds for anything they like: "They can pay for their grandkids' daycare if they want to." TR at 1126; *see also id.* at 663. The hearing officer rejected McGrath's assertion, concluding that the exception for commingling funds under RPC 1.15A(h)(1)(ii) applies only to "client funds that were directly connected with a specific and actual representation" and that the funds in question were unconnected to any specific representation. AFFCL ¶ 70.

The hearing officer's conclusion is consistent with the plain meaning of the rule, which applies on its face only to "property of clients or third persons in a lawyer's possession *in connection with a representation.*" RPC 1.15A(a) (emphasis added). Reading the rule to cover *any* client property is inconsistent with this plain meaning and would undermine the narrow purpose of the rule,

---

entity and treat McGrath's failure to disclose its assets as intentional concealment of bankruptcy assets.

which is to safeguard a client's property against the dangers of "conversion, negligent misappropriation, or loss." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 44 cmt. b (2000). We reject any reading of this rule that would transform trust accounts into ordinary bank accounts managed by the lawyer. *See In re Disciplinary Proceeding Against Trejo*, 163 Wn.2d 701, 725, 185 P.3d 1160 (2008) (explaining that the trust account rule that preceded former RPC 1.14 (2002) "'implicitly includes the duty not to use a lawyer's trust account as a personal bank.'" (quoting *In re Pers. Restraint of McKean*, 148 Wn.2d 849, 865, 64 P.3d 1226 (2003))). Finally, McGrath's interpretation is inconsistent with RPC 1.15A(f), which requires a lawyer to "promptly pay or deliver to the client . . . the property which the client . . . is entitled to receive." Client funds must be delivered to the client, not held indefinitely in a lawyer's trust account to meet ongoing client expenses. We reject McGrath's invitation to broaden the trust account rule beyond its purpose and plain language and affirm the hearing officer's conclusion that McGrath's deposits into his trust account violated RPC 1.15A(h)(1), per count 3.

C. Recommended Sanctions

The hearing officer recommended disbarment for each of the nine counts against McGrath. The Board adopted this recommendation by a vote of 13-0. Board Order at 1 n.1. We review sanctions de novo, but where a sanction is recommended by a unanimous board, we will uphold it "in the absence of a clear

reason for departure." *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003). McGrath cannot make this showing.

*1. Presumptive Sanction*

Applying the American Bar Association's *Standards for Imposing Lawyer Sanctions* standards 5.11, 6.11 (1991 & Supp. 1992) (ABA *Standards*), the hearing officer found that the presumptive sanction for counts 1-4 was disbarment. AFFCL ¶¶ 119-22. Applying ABA *Standards* standard 4.12, he found that the presumptive sanction for counts 5-8 was suspension, and applying standard 6.33, he found that the presumptive sanction for count 9 was reprimand. AFFCL ¶¶ 123-29. Because he concluded the WSBA had proved counts 1-4 by a clear preponderance of evidence, the hearing officer found that the appropriate presumptive sanction for each count was disbarment. *Id.* ¶¶ 130-31, 140-41; *see In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (explaining the ultimate sanction "'should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations'" (quoting ABA STANDARDS at 6)).

McGrath denies the factual findings of the counts against him and the legal conclusions they support, including the sanction of disbarment, but not the hearing officer's conclusion that disbarment is the correct presumptive sanction for the counts against him. Because the hearing officer's findings are supported by

substantial evidence and his conclusions are correct, we uphold the finding that disbarment is the presumptive sanction for each count.

*2. Aggravating and Mitigating Factors*

Applying ABA *Standards* standard 9.22, the hearing officer found six aggravating factors: prior disciplinary offenses, dishonest and selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the misconduct, and substantial experience in the practice of law. AFFCL ¶¶ 133-39. McGrath asks us to reject those aggravating factors that depend upon the hearing officer's findings of fact, notably dishonest and selfish motive, pattern of misconduct, and multiple offenses. As discussed above, the hearing officer's findings are supported by substantial evidence, and we uphold them. Because we take judicial notice of McGrath's 2012 suspension, his objection to the use of prior discipline from 1982 as an aggravating factor is also misplaced.

Additionally, McGrath contests the finding that he failed to acknowledge his wrongful conduct, arguing that it would be unfair to require him to confess in order to avoid this aggravating factor. Failure to admit wrongful conduct applies "'to an attorney who admits he engaged in the alleged conduct'" and yet "'denies the conduct was wrongful.'" *In re Conteh*, 175 Wn.2d at 151 (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Ferguson*, 170 Wn.2d 916, 943-44, 246 P.3d 1236 (2011)). The record shows that McGrath

continues to insist his conduct, including filing false statements with the bankruptcy court and concealing bankruptcy estate assets in his trust account, was not wrongful. The record also shows that McGrath blamed others for his actions, particularly Atwood, the attorney hired to collect Ellison's judgment.

The hearing officer found no mitigating factors. AFFCL ¶ 140. Because McGrath fails to recognize that his conduct was wrongful, we uphold the finding that his payment of discovery sanctions and eventual settlement of the Ellison litigation were not mitigating factors. McGrath willfully obstructed the bankruptcy process and failed to produce the records sought even after he was sanctioned and assessed a $1,500 fine for acting in bad faith. We decline to count the consequences of McGrath's actions in his favor when he fails to acknowledge what he did was wrong. *See In re Disciplinary Proceeding Against VanDerbeek*, 153 Wn.2d 64, 95, 101 P.3d 88 (2004). Finally, McGrath asks us to treat his substantial experience in bankruptcy law as a mitigating, rather than an aggravating factor, by inferring that he intended to amend his false and misleading bankruptcy filings. We reject this argument and affirm the hearing officer's finding that McGrath's experience as a bankruptcy attorney makes his conduct more culpable, not less so.

### 3. Proportionality

McGrath argues that disbarment is not a proportional sanction for his misconduct. Proportional sanctions are "'roughly proportionate to sanctions

imposed in similar situations or for analogous levels of culpability.'" *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 623, 98 P.3d 444 (2004) (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000)). In proportionality review, we compare the lawyer's misconduct, "including his record of prior disciplinary offenses, and especially any prior, similar misconduct," against ""'similarly situated cases in which the same sanction was approved or disapproved."'" *In re Disciplinary Proceeding Against Cramer*, 168 Wn.2d 220, 239-40, 225 P.3d 881 (2010) (quoting *In re VanDerbeek*, 153 Wn.2d at 97 (quoting *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003))).

The lawyer bears the burden of demonstrating disproportionality. *In re Cramer*, 168 Wn.2d at 240. McGrath cites two cases that he urges show lesser penalties for similar conduct. Opening Br. at 59. However, neither case is similarly situated. In *In re Conteh*, 175 Wn.2d at 150-51, the lawyer faced the presumptive sanction of suspension, not disbarment, and his only prior discipline was for negligent conduct. In *In re Dynan*, 152 Wn.2d at 620, the presumptive sanction was disbarment, but the lawyer had no prior discipline and we found that he did not intend to deceive the court or act with a dishonest or selfish motive. The presumptive sanction for McGrath's misconduct is disbarment. He has serious and recent prior discipline. His pattern of offenses demonstrates intent to defraud the bankruptcy court and a failure to acknowledge the wrongfulness of his actions.

McGrath has not met his burden to show disbarment is disproportionate given these findings and conclusions, and we hold that disbarment is the correct sanction.

## CONCLUSION

McGrath willfully and fraudulently concealed assets and submitted false filings and claims in the bankruptcy of his wife and her corporation. His innocent explanations for these actions failed to persuade the hearing officer or the Board, and we reject them. Given the severity and willfulness of his pattern of misconduct, and his refusal to accept responsibility for his actions, disbarment is the correct sanction and is not disproportionate. We affirm the Board's unanimous recommendation of disbarment.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
_____
J. M. Johnson, J.

_____
Johnson, J.

_____
Wiggins, J.

_____
Owens, J.

_____
González, J.

_____
Fairhurst, J.

_____
Gordon McCloud, J.