[No. 200,748-1.   En Banc.]
Argued September 21, 2010.     Decided January 13, 2011.

*In the Matter of the Disciplinary Proceeding Against* J. DAVID SMITH, *an Attorney at Law.*

*Kurt M. Bulmer*, for J. David Smith.

*Scott G. Busby*, for the Bar Association.

¶1 J.M. JOHNSON, J. — This case presents us with the question of whether rule 10.14(c) of the Rules for Enforcement of Lawyer Conduct (ELC), which provides that the record of a civilian criminal conviction is conclusive evidence of the underlying misconduct at an attorney disciplinary proceeding, violates state and federal constitutional requirements. We hold that it does not.

¶2 ELC 10.14(c) states that the court record of an attorney's criminal conviction is conclusive evidence of his guilt at a disciplinary proceeding. A federal court convicted attorney J. David Smith of conspiracy to commit securities and wire fraud. Based on ELC 10.14(c), a hearing officer concluded that Smith violated several provisions of the Rules of Professional Conduct (RPC) and recommended disbarment. The Washington State Bar Association Disciplinary Board (Board) agreed. Smith appeals, arguing that ELC 10.14(c) is unconstitutional and that there is insufficient evidence to warrant his disbarment. Smith's appeal is denied, and we disbar him.

FACTS AND PROCEDURAL HISTORY

¶3 On February 12, 2004, federal prosecutors charged attorney Smith with several violations of federal law.[1] Pursuant to a plea agreement, Smith pleaded guilty to one count of criminal conspiracy to commit securities and wire fraud in violation of 18 U.S.C. § 371. Consistent with Smith's plea, a federal district court convicted Smith and sentenced him to 18 months of confinement and 3 years in a supervised release program.

¶4 The Washington State Bar Association (Association) filed a formal complaint against Smith alleging that his criminal acts violated several RPC provisions.[2] In his answer to the formal complaint, Smith admitted that he pleaded guilty to criminal conspiracy but denied that the statement of facts incorporated into the formal complaint from his plea agreement accurately described his conduct. Prior to Smith's disciplinary hearing, the Association filed a motion under ELC 10.10(b) for an order finding misconduct based on the pleadings. Relying on ELC 10.14(c), the Association argued that Smith's criminal conspiracy conviction conclusively established that he committed the underlying criminal misconduct and that the criminal misconduct violated several RPC provisions. The hearing officer granted the Association's motion and issued an order holding that Smith committed the misconduct alleged in the formal complaint.

¶5 On December 10, 2008, the hearing officer conducted a hearing to determine the appropriate sanctions for Smith's misconduct. At the hearing, despite the adamant protests of Smith's counsel, the hearing officer refused to

---

[1] The United States Attorney's Office for the Western District of Washington charged Smith with 1 count of criminal conspiracy in violation of 18 U.S.C. § 371; 9 counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; and 10 counts of wire fraud in violation of 18 U.S.C. §§ 2 and 1343.

[2] The formal complaint alleged violations of RPC 1.2(d), 4.1(a), 4.1(b), 8.4(b), and/or 8.4(c), and/or RPC 8.4(i) (formerly Rules for Lawyer Discipline 1.1(a)).

allow Smith to repudiate his plea agreement or deny the factual predicates that resulted in his criminal conviction. Over Smith's objections, the hearing officer admitted several exhibits from the Association, including Smith's federal indictment, his plea agreement, transcripts of his guilty plea colloquy, and the federal court's final judgment and sentence.

¶6 On January 14, 2009, the hearing officer issued his findings and recommendations. The hearing officer adopted numerous facts from Smith's plea agreement and statements from his guilty plea colloquy and sentencing proceeding. He determined that Smith's misconduct violated several RPC provisions.[3] Additionally, the hearing officer found that Smith's misconduct presented several aggravating factors and one mitigating factor (i.e., absence of a prior disciplinary record).[4] The hearing officer recommended disbarment.

¶7 The Board filed a unanimous order adopting the hearing officer's determination that Smith violated RPC 8.4(b), 8.4(c), and 8.4(i) and the hearing officer's recommendation to disbar Smith. However, the Board dismissed the violations of RPC 1.2(d) and 4.1(a) and (b), finding that the hearing officer could rely only on the formal complaint and answer to determine Smith's ethical violations. The Board determined that the elements of Smith's crime did not involve counseling or assisting clients and that there was insufficient evidence to conclude that Smith violated RPC 1.2(d) and 4.1(a) and (b). Smith appealed the Board's order. We deny Smith's appeal and adopt the Board's conclusions that Smith violated RPC 8.4(b), 8.4(c), and 8.4(i). We disbar Smith from practicing law in the state of Washington.

---

[3] The hearing officer concluded that Smith's misconduct violated every provision alleged in the Association's formal complaint—i.e., RPC 1.2(d), 4.1(a), 4.1(b), 8.4(b), 8.4(c), and 8.4(i).

[4] The hearing officer found the presence of the following aggravating factors: dishonest or selfish motives, a pattern of misconduct, substantial experience in the practice of law, and refusal to acknowledge wrongful nature of conduct.

ANALYSIS

¶8 We hold that the operation of ELC 10.14(c) in Smith's disciplinary proceedings did not violate his due process rights and that there is sufficient evidence to warrant the Board's findings. For these reasons, he is disbarred.

1. *Standard of Review*

¶9 We retain the ultimate responsibility for lawyer discipline in Washington. *In re Disciplinary Proceeding Against Vanderveen*, 166 Wn.2d 594, 604, 211 P.3d 1008 (2009). However, we give great weight to the hearing officer's factual findings and will uphold those findings supported by substantial evidence. *Id.*; *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 208-09, 125 P.3d 954 (2006). We review legal conclusions de novo and will uphold legal conclusions supported by the findings of fact. *Vanderveen*, 166 Wn.2d at 604. While we review recommended sanctions de novo, we generally affirm the Board's recommended sanction unless we can articulate a specific reason to reject it. *Id.*; *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 59, 93 P.3d 166 (2004).

2. *ELC 10.14(c) Does Not Violate Constitutional Due Process Guaranties*

¶10 In a disciplinary hearing, ELC 10.14(c) provides that a prior criminal conviction is conclusive evidence that an attorney committed the crime that forms the basis of his conviction. An attorney may not dispute "the essential facts regarding a prior criminal conviction for the purposes of a disciplinary proceeding." *Vanderveen*, 166 Wn.2d at 608. Though an attorney may present matters in mitigation, he may only " 'offer evidence of mitigating circumstances *not inconsistent* with the essential elements of the crime whose existence is conclusively established by the finding of guilt.' " *Id.* (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Perez-Pena*, 161 Wn.2d

820, 831, 168 P.3d 408 (2007)). The hearing officer received evidence of Smith's federal felony conviction and properly determined that this conclusively established Smith's participation in a criminal conspiracy to commit securities and wire fraud in violation of federal law.

¶11 Smith challenges the hearing officer's factual findings and argues that ELC 10.14(c) deprives him of his constitutional rights to due process.[5] This argument fails. In order to discipline an attorney, the Association "has the burden of establishing an act of misconduct by a clear preponderance of the evidence." ELC 10.14(b). " ' "Clear preponderance" is an intermediate standard of proof . . . requiring greater certainty than "simple preponderance" but not to the extent required [by the criminal standard of] "beyond [a] reasonable doubt." ' " *Poole*, 156 Wn.2d at 209 (first and third alterations in original) (quoting *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988)). To subject an attorney to criminal liability, a prosecutor must have established his guilt beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Roggenkamp*, 153 Wn.2d 614, 642, 106 P.3d 196 (2005). Here, a federal district court convicted Smith of criminal conspiracy beyond a reasonable doubt. The due process afforded to Smith during his criminal proceedings allays any concerns that the Association failed to satisfy the clear preponderance standard applicable to attorney discipline cases.

¶12 It is well established under Washington law that a federal criminal conviction is an appropriate basis for disciplinary action against an attorney. *See, e.g., In re Disbarment of Hopkins*, 54 Wash. 569, 103 P. 805 (1909); *In re Proceedings for Disbarment of Wells*, 121 Wash. 68, 208 P. 25 (1922); *In re Proceedings for Disbarment of Comyns*, 132

---

[5] Smith alleges violations of the Fifth and Fourteenth Amendments to the United States Constitution as well as article I, section 3 of the Washington State Constitution.

Wash. 391, 232 P. 269 (1925); *In re Proceedings for Disbarment of Finch*, 156 Wash. 609, 287 P. 677 (1930); *In re Disbarment of Burns*, 13 Wn.2d 199, 124 P.2d 550 (1942); *In re Proceedings for Disbarment of Barnett*, 35 Wn.2d 191, 211 P.2d 714 (1949); *In re Disciplinary Proceeding Against Hett*, 70 Wn.2d 435, 423 P.2d 629 (1967); *In re Disciplinary Proceeding Against Krogh*, 85 Wn.2d 462, 536 P.2d 578 (1975); *In re Disciplinary Proceeding Against Egger*, 86 Wn.2d 596, 547 P.2d 864 (1976).

¶13 Additionally, the historical rules governing attorney discipline in Washington provide that, at a disciplinary proceeding, a criminal conviction is conclusive evidence of an attorney's guilt. *See, e.g.*, REM. COMP. STAT. § 139-14; former DRA 1.1(a) (1975); former RLD 4.9 (1983); ELC 10.14(c). Our recent decisions applying ELC 10.14(c) are inapposite. *See Vanderveen*, 166 Wn.2d 594; *Perez-Pena*, 161 Wn.2d 820; *In re Disciplinary Proceeding Against Day*, 162 Wn.2d 527, 173 P.3d 915 (2007).

¶14 As we explained long ago while discussing a predecessor rule to ELC 10.14(c),

> [the rule] provides that "the record of conviction shall be conclusive evidence." The purpose of this last quoted clause is apparent. We have no power to review the judgments of the Federal courts and must accept them as binding on us. The legislature, realizing the futility of going behind the record of conviction in any such case, made that record conclusive evidence and we must accept it as such.

*Finch*, 156 Wash. at 610 (quoting REM. COMP. STAT. § 139-14).

¶15 Besides the rule's historical pedigree in Washington, the vast consensus of modern legal authority supports the constitutionality of rules such as ELC 10.14(c). In addition to Washington, at least 42 other states and the District of

Columbia allow criminal convictions to serve as conclusive proof in disciplinary proceedings.[6]

¶16 Further, rule 19(E) of the American Bar Association's *Model Rules for Lawyer Disciplinary Enforcement* (2002) states unequivocally that "a certified copy of a judgment of conviction constitutes conclusive evidence that the lawyer committed the crime." As the high court of Maryland explained:

> The requirements of due process having been satisfied at the criminal trial, and the attorney's guilt having been established beyond a reasonable doubt at that proceeding, a new or other inquiry into the guilt of the attorney for disciplinary purposes is not mandated by either the State or federal constitutions.

*Md. State Bar Ass'n v. Rosenberg*, 273 Md. 351, 355, 329 A.2d 106 (1974); *see also La. State Bar Ass'n v. Wilkinson*, 562 So. 2d 902, 903 (La. 1990) ("due process does not require a second opportunity for the lawyer to refute the criminal charges"); *Disciplinary Counsel v. McAuliffe*, 121 Ohio St. 3d 315, 319, 2009-Ohio-1151, 903 N.E.2d 1209 (2009) (" 'a disciplinary proceeding is not an appropriate forum in which to collaterally attack a criminal conviction' " (quoting *Bar Ass'n of Greater Cleveland v. Chvosta*, 62 Ohio St. 2d 429, 430, 406 N.E.2d 524 (1980))); *In re Conduct of*

---

[6] *See* Alaska State Bar R. 26(c); Ariz. Sup. Ct. R. 53(h)(1); Ark. P. Regulating Prof'l Conduct of Attorneys § 15(C)(3); Cal. Bus. & Prof'l Code § 6101(a); Colo. R. of P. Regarding Attorney Discipline R. 251.20(a); Conn. Super. Ct. R., Practice Book § 2-41(e); D.C. Bar R. XI, § 10; Fla. State Bar R. 3-7.2(b); Haw. Sup. Ct. R. 2.13(e); Idaho Bar Comm'n R. 512(c); Ill. Sup. Ct. R. 761(f); Iowa Code § 602.10122(1); Kan. R. Regarding Discipline of Attorneys R. 202; La. Sup. Ct. R. § 19(E); Me. Bar R. 7.3(d)(2); Md. R. of P. R. 16.771(g); Mass. Sup. Jud. Ct. R. 4:01, § 12(2); Mich. Ct. R. 9.120(B)(2); Minn. R. on Lawyers Prof'l Responsibility R. 19(a); Miss. State Bar Disciplinary R. 6(a); Mont. R. for Lawyer Discipline Enforcement R. 23(D); Neb. Sup. Ct. R. § 3-326(A); Nev. Sup. Ct. R. 111(5); N.H. Sup. Ct. R. 37(9)(c); N.J. R. of Discipline of Members of Bar R. 1:20-13(c)(1); N.M. Sup. Ct. R. 17-207(C); N.Y. Ct. R. § 603.12(c); N.C. State Bar R. ch. 1, subch. B § .0115(c); N.D. R. for Lawyer Discipline R. 4.1(F); Ohio State Gov't Bar R. (V) § 5(B); Okla. R. Governing Disciplinary Proceedings R. 7.2; Or. Rev. Stat. § 9.527(2); Pa. R. of Disciplinary Enforcement R. 214(e); R.I. Sup. Ct. R. art. III, R. 12(b); S.C. R. for Lawyer Disciplinary Enforcement R. 16(d); S.D. Codified Laws § 16-19-58; Tenn. Sup. Ct. R. § 14.3; Tex. Gov't Code Ann. § 81.078(d); Utah R. Governing State Bar R. 14-519(e); W. Va. Lawyer Discipline R. 3.18(e); Wis. Sup. Ct. R. 22.20(5); Disciplinary Code for Wyo. State Bar § 18(d).

*Coyner*, 342 Or. 104, 110-11, 149 P.3d 1118 (2006) (rejecting attorney's collateral attack on his criminal conviction at a disciplinary proceeding); *In re Disbarment of Prantil*, 48 Cal. 3d 227, 233, 768 P.2d 109, 255 Cal. Rptr. 890 (1989) (stating that the due process afforded the attorney at his criminal proceeding resolved the " 'entire matter' " and rejecting his claim that use of his conviction at a disciplinary proceeding violated due process (emphasis omitted) (quoting *In re Disbarment of Collins*, 188 Cal. 701, 708, 206 P. 990 (1922))); *Fla. Bar v. Lancaster*, 448 So. 2d 1019, 1021-22 (Fla. 1984) ("a nolo contendere plea along with an adjudication of guilt is sufficient to sustain disciplinary action").

■ ■ ¶17 Smith's attempt to distinguish his federal conviction because it resulted from a guilty plea as opposed to a fully contested trial is unconvincing. "For the purposes of a disciplinary proceeding, a plea of guilty will be treated the same as a jury verdict of guilty." *In re Disciplinary Proceeding Against McGrath*, 98 Wn.2d 337, 341, 655 P.2d 232 (1982). In the eyes of the law, a conviction predicated by the defendant's own plea of guilt is as certain as a conviction based upon a trial on the merits. *See State v. Schimmelpfennig*, 92 Wn.2d 95, 104, 594 P.2d 442 (1979) ("A plea of guilty should thus be treated no differently than a jury verdict."); *see also Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601 (1966) ("Unless withdrawn before sentence is pronounced, [a guilty] plea has the same effect in law as a verdict of guilty, for nothing remains to be done save the imposition of sentence."); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."); *Kercheval v. United States*, 274 U.S. 220, 223, 47 S. Ct. 582, 71 L. Ed. 1009 (1927) (stating, "[A guilty plea] is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence.").

¶18 Before accepting a defendant's guilty plea, a federal court conducts the inquiry prescribed by rule 11 of the Federal Rules of Criminal Procedure that is "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). Once a federal judge determines that the plea is voluntary and accepts the defendant's guilty plea, "[w]e have no power to review the judgments of the Federal courts and must accept them as binding on us." *Finch*, 156 Wash. at 610. In Smith's case, a federal court engaged in a lengthy colloquy, determined that Smith chose to plead voluntarily, accepted Smith's guilty plea, and entered judgment and sentence in the case. There is no legal uncertainty concerning his conviction.

¶19 Smith mistakenly refers to the use of his federal conviction in disciplinary proceedings as a "presumption." The ability of disciplinary counsel to utilize Smith's felony conviction at the disciplinary proceeding is not a mere "presumption" but is a *collateral consequence* of his criminal conviction. Convicted felons face a variety of nonpunitive collateral consequences in addition to their punitive criminal sentence. *See In re Disciplinary Proceeding Against Walgren*, 104 Wn.2d 557, 569, 708 P.2d 380 (1985) (discussing collateral consequences of a felony conviction under Washington law). The lawful judgment of a federal court is not a mere "presumption," and its use in collateral proceedings is legally unproblematic.

¶20 Lastly, Smith wrongly argues that ELC 10.14(c) rests on the assumption that only guilty people plead guilty. This is not the case. Smith confuses the actual guilt of a defendant with the method used to ascertain whether he is guilty. Were a federal court to wrongly accept an involuntary or coerced guilty plea, the proper remedy is through the appellate review process established in the federal court system. An attorney's disciplinary proceeding is not the appropriate forum for collateral attacks on a federal conviction.

¶21 A federal court determined that Smith voluntarily pleaded guilty to the crime of criminal conspiracy to commit securities and wire fraud and convicted him accordingly. Pursuant to ELC 10.14(c), the hearing officer and the Board accepted the court record as conclusive evidence of Smith's guilt. The operation of ELC 10.14(c) as applied to Smith's disciplinary proceedings comports with both the federal and state constitutions.

### 3. *Sufficient Evidence Warrants Smith's Disbarment*

¶22 Based on ELC 10.14(c) and Smith's federal conviction for conspiracy to commit securities and wire fraud, the Board determined that Smith violated RPC 8.4(b), 8.4(c), and 8.4(i). Sufficient evidence supports all of the Board's findings.

¶23 Under RPC 8.4(b), it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Smith's conspiracy to commit securities and wire fraud is both a criminal act and a criminal act that by its nature involves dishonesty, demonstrating a lack of trustworthiness.

¶24 RPC 8.4(c) prohibits attorneys from engaging in "conduct involving dishonesty, *fraud,* deceit or misrepresentation." (Emphasis added.) Smith's criminal conspiracy to commit fraud violated RPC 8.4(c).

¶25 RPC 8.4(i) prohibits any act "involving moral turpitude . . . or other act which reflects disregard for the rule of law." A felonious conspiracy to commit fraud in violation of federal law is dishonest and immoral conduct that demonstrates a disregard for the rule of law. *See Hopkins,* 54 Wash. at 572-73 (holding that an attorney's federal conviction for fraudulent notarizations constitutes a crime of moral turpitude); *see also Krogh,* 85 Wn.2d at 484 (affirming board conclusion that attorney's federal conspiracy conviction constitutes a crime of moral turpitude).

¶26 Based on Smith's ethical violations, disbarment is the appropriate sanction. The American Bar Asso-

ciation's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (*Standards*) "govern lawyer sanctions in Washington." *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 342, 157 P.3d 859 (2007). Relying on the *Standards*, we use a well established three-stage analysis to determine the appropriate sanction. *In re Disciplinary Proceeding Against Preszler*, 169 Wn.2d 1, 18, 232 P.3d 1118 (2010). First, we evaluate whether the Board properly determined the presumptive sanction taking into consideration " '(1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's conduct.' " *Id.* (quoting *Marshall*, 160 Wn.2d at 342). Second, "we determine whether any aggravating or mitigating circumstances call for a departure from the presumptive sanction." *Id.* Third, "we evaluate the Board's recommended sanction based on '(1) the proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board.' " *Id.* (quoting *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 764, 108 P.3d 761 (2005)).

¶27 Based upon *Standards* std. 5.11(a), the Board concluded that the appropriate sanction for Smith's misconduct was disbarment.[7] The Board properly determined the presumptive sanction. Smith's ethical violations include (1) criminal acts that reflect adversely on his honesty, trustworthiness, and fitness as a lawyer; (2) conduct involving dishonesty, fraud, and deceit; and (3) acts involving moral turpitude and disregard for the rule of law. Further, he possessed the culpable mental state that is an essential element of his criminal conviction. *See* STANDARDS at 7 (defining "[i]ntent" as "the conscious objective or purpose to accomplish a particular result"); *see also Salinas v. United States*, 522 U.S. 52, 63, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) (stating that the partners in a conspiracy

---

[7] We do not reach the issues of whether, under our case law, disbarment is the presumptive sanction for acts of moral turpitude or whether *Standards* std. 5.11(b) applies to Smith's misconduct. The Board based its final order solely on *Standards* std. 5.11(a).

"must agree to pursue the same criminal objective"); *United States v. Becker*, 720 F.2d 1033, 1035 (9th Cir. 1983) ("The essential elements of conspiracy are 'an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.' " (quoting *United States v. Sangmeister*, 685 F.2d 1124, 1126 (9th Cir. 1982))); *United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998) (stating that a conviction under 18 U.S.C. § 371 requires the government to "prove beyond a reasonable doubt that each defendant had a 'deliberate, knowing, specific intent to join the conspiracy' " (quoting *United States v. Cole*, 755 F.2d 748, 755 (11th Cir. 1985))). Smith possessed the requisite intent necessary to engage in the criminal conspiracy that gave rise to his ethical violations. Lastly, his misconduct caused potential injury to the intended victims of his fraudulent conspiracy and the public's perception of lawyers and the legal profession.

¶28 *Standards* std. 5.11(a) states that disbarment is generally appropriate if a lawyer engages in any "serious criminal conduct a necessary element of which includes . . . misrepresentation, fraud, extortion, misappropriation, or theft." Smith knowingly engaged in a conspiracy to commit fraud that would potentially harm the victims of his fraudulent scheme. Taking into account both Smith's misconduct and the *Standards*, the Board properly concluded that the presumptive sanction for Smith is disbarment.

¶29 The hearing officer found one mitigating factor applicable to Smith's case, i.e., the absence of a prior disciplinary record.[8] Smith's mitigating circumstance does not call for a departure from the presumptive sanction, and the Board's recommended disbarment is appropriate. "[T]he Board should deviate from the presumptive sanction only if

---

[8] The hearing officer also found the presence of several aggravating factors. Regardless of whether the record supports the presence of these aggravating factors, Smith's sole mitigating factor would not overcome the presumptive sanction of disbarment.

the aggravating and mitigating factors are sufficiently compelling to justify a departure." *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003). Even where there are several mitigating factors, including absence of a prior disciplinary record, the attorney's misconduct may still warrant the presumptive sanction. *See Vanderveen*, 166 Wn.2d at 615 ("Although three mitigators [including absence of a prior disciplinary record] and only one aggravator exist in this case, when we consider all the mitigators together, they are not sufficiently compelling to justify departure from the presumptive sanction."). Smith's ethical violations arising from his criminal conspiracy warrant disbarment. The mere absence of previous disciplinary action against him is not sufficiently compelling to justify departure from the presumptive sanction.

¶30 Disbarment is proportional to Smith's misconduct and was the unanimous recommendation of both the hearing officer and the Board. "In proportionality review, we compare the case at hand with similarly situated cases in which the same action was either approved or disapproved." *Id.* at 616. Disbarment is our general practice when sanctioning attorneys for federal criminal conspiracy convictions; therefore, it is not a disproportionate sanction. *See Krogh*, 85 Wn.2d at 484 (disbarring attorney based upon federal conspiracy conviction); *Wells*, 121 Wash. at 74 (disbarring attorney based upon federal conspiracy conviction); *Finch*, 156 Wash. at 612 (disbarring attorney based upon federal conspiracy conviction); *Barnett*, 35 Wn.2d 191 (disbarring attorney based upon federal conspiracy conviction). Additionally, the Board unanimously recommended Smith's disbarment. For these reasons, we affirm the Board and disbar Smith.

CONCLUSION

¶31 We hold that the operation of ELC 10.14(c) in Smith's disciplinary proceedings did not violate his due

738

process rights and that there is sufficient evidence to warrant the Board's findings. We order Smith disbarred.

MADSEN, C.J.; C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ.; and SANDERS, J. PRO TEM., concur.