FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 22, 2024

González C.J.
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 22, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 202153-1 |
| TROY XAVIER KELLEY, | ) ) | En Banc |
| Attorney at Law. | ) ) ) ) | Filed: August 22, 2024 |

MADSEN, J.—Troy X. Kelley was convicted of eight federal felonies, including possession and concealment of stolen property, making false declarations, and filing false income tax returns. Based on those convictions, the disciplinary hearing officer recommended disbarment and the Washington State Bar Association (WSBA) Disciplinary Board (Board) agreed in a 5-3 decision. We agree with the Board's recommendation to disbar Kelley.

## BACKGROUND

Kelley has been a licensed attorney in Washington since 2001.[1] In 2015, the United States Attorney for the Western District of Washington filed an indictment

---

[1] Kelley was admitted to the practice of law in three other states: California (admitted in 1990), New York (admitted in 1996), and the District of Columbia (admitted in 1990). Kelley has no

charging Kelley with one count of possession and concealment of stolen property under 18 U.S.C. § 2315 (count 1), five counts of making false material declarations under 18 U.S.C. § 1623(a) (counts 2-5 and 16), five counts of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) and (2) (counts 6-10), one count of corrupt interference with internal revenue laws under 26 U.S.C. § 7212(a) (count 11), and five counts of filing false income tax returns under 26 U.S.C. § 7206(1) (counts 12-15 and 17).[2]

In December 2017, a jury convicted Kelley on counts 1, 2, 5, 11, 12 through 15, and 17.[3]  Count 1, possession and concealment of stolen property, relates to the reconveyance fees Kelley charged his clients between 2008 and 2012.  Counts 2 and 5 involve false declarations made by Kelley while testifying in a civil deposition.  Counts 12 through 15 and 17 relate to filing false income tax returns in 2008, 2009, 2012, 2013, and 2014.[4]

An amended judgment and sentence was entered in September 2018, imposing a prison term of 12 months and 1 day, to be followed by a term of supervised release of 1 year, and restitution in the amount of $31,144.[5]  Kelley appealed to the Ninth Circuit

---

prior disciplinary record.  He has also served three terms in the Washington State House of Representatives and one term as Washington State Auditor beginning in 2012.  Additionally, Kelley has served 28 years in the military and is now retired.  He has also been enrolled as a tax preparer with the United States Internal Revenue Service for calendar years 2022 and 2023.

[2] The charges are based largely on conduct related to Kelley's former business, where he tracked and recorded reconveyances of deeds of trust for title companies in connection with home loans and charged his clients reconveyance fees.

[3] In May 2018, the trial court granted Kelley's motion to dismiss count 11.

[4] Kelley does not dispute the underlying convictions or the facts in this case.

[5] In January 2018, as a result of the convictions, this court ordered an interim suspension under ELC 7.1.

Court of Appeals, which affirmed Kelley's convictions. The United States Supreme Court denied Kelley's petition for a writ of certiorari.[6]

In June 2022, the Office of Disciplinary Counsel (ODC) filed a "Second Amended Formal Complaint," charging Kelley with eight counts of misconduct:

1. "[Count 1:] By committing the crime of possession and concealment of stolen property, as charged in Count 1 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 2315), RPC 8.4(c), and/or RPC 8.4(i)."

2. "[Count 2:] By committing the crime of false declaration, as charged in Count 2 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 1623 (a)), RPC 8.4(c), and/or RPC 8.4(i)."

3. "[Count 3:] By committing the crime of false declaration, as charged in Count 5 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 1623 (a)), RPC 8.4(c), and/or RPC 8.4(i)."

4. "[Count 4:] By committing the crime of filing a false income tax return, as charged in Count 12 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 7206(1)), RPC 8.4(c), and/or RPC 8.4(i)."

5. "[Count 5:] By committing the crime of filing a false income tax return, as charged in Count 13 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 7206(1)), RPC 8.4(c), and/or RPC 8.4(i)."

6. "[Count 6:] By committing the crime of filing a false income tax return, as charged in Count 14 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 7206(1)), RPC 8.4(c), and/or RPC 8.4(i)."

7. "[Count 7:] By committing the crime of filing a false income tax return, as charged in Count 15 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 7206(1)), RPC 8.4(c), and/or RPC 8.4(i)."

---

[6] Kelley acknowledges that he has exhausted direct appeals of his convictions.

8. "[Count 8:] By committing the crime of filing a false income tax return, as charged in Count 17 of the Superseding Indictment, Respondent [Kelley] violated RPC 8.4(b) (by violating 18 U.S.C. § 7206(1)), RPC 8.4(c), and/or RPC 8.4(i)."

Clerk's Papers (CP) at 41-43.

After a hearing in November 2022, the hearing officer entered findings of fact and conclusions of law, concluding that ODC had proved all charged counts.

Applying the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (*Standards*), the hearing officer concluded that the presumptive sanction for all counts is disbarment (citing STANDARDS std. 5.11(a)-(b)). The hearing officer found that four aggravating factors applied: dishonest or selfish motive, multiple offenses, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law. Two mitigating factors applied: absence of a prior disciplinary record, and character or reputation. Ultimately, however, the hearing officer concluded that the mitigating factors did not warrant a departure from the presumptive sanction of disbarment.

Kelley appealed to the Board. On appeal, Kelley challenged the disbarment recommendation and requested additional proceedings under ELC 11.11.

In a 5-3 decision, the Board adopted the hearing officer's recommendation for disbarment. Moreover, it unanimously denied Kelley's request for additional proceedings under ELC 11.11.[7] Kelley appealed to this court.[8] Kelley seeks a three-year suspension followed by a three-year period of probation. He also requests to be placed in inactive status with the bar.

## ANALYSIS

### *Standard of Review*

This court has definitive authority over matters relating to attorney discipline. *In re Disciplinary Proc. Against Kuvara*, 149 Wn.2d 237, 246, 66 P.3d 1057 (2003). However, considerable weight is given to the Board's recommendation, and we should not lightly depart from recommendations shaped by the Board's unique experience and

---

[7] Kelley appeals the Board's 8-0 decision denying his request for additional proceedings under ELC 11.11. ELC 11.11 allows an additional hearing "based on newly discovered evidence." Kelley argues that the hearing officer should have allowed a witness, Kevin Plachy, to testify at the disciplinary hearing. "[A] moving party must show . . . that the evidence could not have been discovered before the original hearing by the exercise of due diligence and that the new evidence will likely change the result." *In re Disciplinary Proc. Against Brothers*, 149 Wn.2d 575, 583, 70 P.3d 940 (2003). Kelley stated at oral argument before the Board, "I knew Mr. Plachy and had not thought of him in over a decade . . . . I simply didn't know he worked for the Bar." Verbatim Tr. of Proc. (Sept. 8, 2023) at 16. Not thinking of someone beforehand as a potential witness is not a sufficient justification for additional proceedings. We affirm the Board's decision denying additional proceedings.

[8] In Kelley's notice of appeal, he states that two days after the Board's decision, he filed a motion for reconsideration. ODC filed a response to the motion, but the Board has yet to issue a ruling on the motion. We do not have a copy of the motion or ODC's response to the motion. After further communication with our clerk's office, ODC reported that it has not received a ruling on the motion. ELC 11.12 does not appear to afford Kelley a right to move for reconsideration of the Board's decision. Therefore, we review the Board's final order adopting the hearing officer's recommendation to disbar him.

perspective in the administration of sanctions. *In re Disciplinary Proc. Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983).[9]

In disciplinary cases, unchallenged findings of fact made by the hearing officer and affirmed by the Board will be accepted as verities on appeal. *In re Disciplinary Proc. Against Carmick*, 146 Wn.2d 582, 594, 48 P.3d 311 (2002). Challenged findings of fact will be accepted as long as they are supported by substantial evidence. *In re Disciplinary Proc. Against Abele*, 184 Wn.2d 1, 12, 358 P.3d 371 (2015).

Conclusions of law are reviewed de novo. *In re Disciplinary Proc. Against Placide*, 190 Wn.2d 402, 416-17, 414 P.3d 1124 (2018). Unless we are able to articulate specific reasons for adopting a different sanction, we will adopt the sanction recommended by the Board. *In re Disciplinary Proc. Against Rodriguez*, 177 Wn.2d 872, 887, 306 P.3d 893 (2013). Sanctions are reviewed de novo. *In re Disciplinary Proc. Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003).

1. <u>Disbarment is the proper presumptive sanction</u>

The *Standards* govern lawyer sanctions in Washington. *In re Disciplinary Proc. Against Marshall*, 160 Wn.2d 317, 342, 157 P.3d 859 (2007). All of the counts brought forth by ODC are based on federal felony convictions. *Standards* std. 5.1 governs criminal conduct that "reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud,

---

[9] The *Noble* court provided five factors to consider when evaluating Board recommendations in attorney discipline cases. In *Kuvara*, we limited our analysis to two of the five factors originally identified in *Noble*, specifically proportionality and unanimity. 149 Wn.2d at 259.

deceit, or misrepresentation." Under this standard, disbarment is generally appropriate when

> (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . . or
> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

STANDARDS std. 5.11. The first step in evaluating whether the Board reached the proper presumptive sanction is to consider (1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's conduct. *Marshall*, 160 Wn.2d at 342. The next step is to consider aggravating and mitigating circumstances, and the final step is to determine "whether the degree of unanimity among board members and the proportionality of the sanction justify departure from the Board's recommendation." *Id*.

*Ethical Violations*

All eight counts brought by ODC allege that Kelley has violated RPC 8.4(b), (c), and (i) by nature of his federal convictions. RPC 8.4 states that it is professional misconduct for a lawyer to

> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> . . . .
> (i) commit any act involving moral turpitude, or corruption, or any unjustified act of assault or other act that reflects disregard for the rule of law, whether the same be committed in the course of their conduct as a

lawyer, or otherwise, and whether the same constitutes a felony or misdemeanor or not; and if the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disciplinary action, nor shall acquittal or dismissal thereof preclude the commencement of a disciplinary proceeding.

Pursuant to ELC 10.14(c), the court record of conviction is conclusive evidence at the disciplinary hearing of the respondent's guilt of the crime and violation of the statute on which the conviction is based. Therefore, Kelley's convictions are evidence of his RPC violations given the nature of his crimes. When multiple ethical violations are found, the "'ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations.'" *In re Disciplinary Proc. Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (quoting STANDARDS, Theoretical Framework). As stated above, *Standards* std. 5.1 governs criminal conduct of the type for which Kelley was convicted and deems disbarment to be the appropriate sanction.

*Mental State*

Kelley disputes that he had the requisite mental state for disbarment, that is whether he acted intentionally in violating the law. "Intent" in the *Standards* is defined as a "'conscious objective or purpose to accomplish a particular result.'" *Marshall*, 160 Wn.2d at 344 (quoting STANDARDS, Definitions). "[I]n cases where we have found an attorney acted with an intentional state of mind, generally the attorney's intent was to benefit herself or himself." *In re Disciplinary Proc. Against Poole*, 156 Wn.2d 196, 239,

125 P.3d 954 (2006) (Madsen, J., dissenting); *see also In re Disciplinary Proc. Against Vanderveen*, 166 Wn.2d 594, 611, 211 P.3d 1008 (2009).

To determine whether the Board reached the proper presumptive sanction of disbarment under *Standards* std. 5.11, we analyze each count, grouping together those that are similar in nature.

*Count 1*

This count states that by committing the crime of possession and concealment of stolen property, Kelley violated RPC 8.4(b), (c), and (i).

The hearing officer determined that *Standards* std. 5.11 applied. In support, he reasoned that possession and concealment of stolen property constitutes serious criminal conduct involving an element of false swearing, misrepresentation, fraud, misappropriation, or theft. Furthermore, he found that Kelley intentionally possessed and concealed property that he knew was stolen, which seriously and adversely reflects on his fitness to practice law.

Kelley contends he lacked the mental state necessary to warrant disbarment under the *Standards*. He argues that to be convicted of possession and concealment of stolen property, he needed only to have intended to possess the funds, not to have concealed them;[10] therefore, he did not intend to break the law or steal money from others. However, the elements of the possession and concealment of stolen property statute are

---

[10] Throughout his brief and in support of his argument here, Kelley references facts that exist outside the record. Arguments should be supported by citations to the record. *See In re Disciplinary Proc. Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998); ELC 12.5 ("Record to Supreme Court").

"(1) the defendant possessed or concealed property, specifically money, that had crossed a state line after having been stolen, (2) at the time the defendant did so the *defendant knew the property had been stolen*, and (3) the total amount of money was $5,000 or more." CP at 5 (emphasis added). Admittedly, proof of concealment is not necessary to be convicted under the statute. Nevertheless, the elements require that the defendant knew the money was stolen when the defendant possessed it. Under *Standards* std. 5.11, Kelley may be disbarred if he engaged in serious criminal conduct that includes elements of misappropriation or theft. Possession of money one knows to be stolen falls under this standard.

Moreover, we have generally found that an attorney acts with an intentional state of mind when the attorney's intent was to benefit himself or herself. *Vanderveen*, 166 Wn.2d at 611. Here, Kelley states in his brief that "he intended his company in Washington (as the title companies he contracted with in Oregon intended) charge homeowners approximately $125 per mortgage release with no intent of giving a refund." Opening Br. of Appellant at 23. Therefore, given the nature of the charges and Kelley's intentional acts, the hearing officer was correct in concluding that the presumptive sanction was disbarment.

*Counts 2 and 3*

These two counts state that by committing the crime of false declaration, Kelley violated RPC 8.4(b), (c), and (i).

10

Applying *Standards* std. 5.11, the hearing officer concluded that making false statements under oath constitutes serious criminal conduct that involved an element of false swearing, misrepresentation, fraud, misappropriation, or theft. *See, e.g.*, *In re Disciplinary Proc. Against Dynan*, 152 Wn.2d 601, 619, 98 P.3d 444 (2004) (concluding that the presumptive sanction for serious criminal conduct that includes false swearing under oath in an official proceeding is disbarment under *Standards* std. 5.11). Moreover, he found Kelley's intentional conduct involved dishonesty, deceit, and misrepresentation, which adversely reflects on his fitness to practice.

Kelley does not dispute that he made the statements underlying these two convictions but claims that the statements he made were true statements. However, ELC 10.14(c) provides that the court record of the conviction is conclusive evidence of guilt of the crime and violation of the statute on which the conviction is based. The elements required for conviction of making a false declaration are "(1) the defendant testified under oath in or ancillary to a court proceeding, (2) the testimony was false, (3) the defendant *knew the testimony was false*, and (4) the false testimony was material to the matters before the court." CP at 5 (emphasis added). Kelley's argument that the statements he made were actually true is unavailing considering the record of his convictions are sufficient to prove that he provided false testimony under oath in or ancillary to a court proceeding. Thus, the hearing officer properly recommended disbarment under *Standards* std. 5.11. *See In re Disciplinary Proc. Against Whitney*, 155 Wn.2d 451, 468, 120 P.3d 550 (2005) (disbarment was warranted under *Standards* std.

5.11 for testifying falsely under oath while acting as guardian ad litem in a family law dispute); *In re Disciplinary Proc. Against Dornay*, 160 Wn.2d 671, 682, 161 P.3d 333 (2007) (under *Standards* std. 5.11, disbarment is the presumptive sanction for making materially misleading statements under oath in a divorce proceeding).

*Counts 4 through 8*

These five counts state that by committing the crime of filing a false income tax return, Kelley violated RPC 8.4(b), (c), and (i).

The hearing officer determined that like counts 1, 2 and 3, counts 4 through 8 are subject to *Standards* std. 5.11 because filing false income tax returns is a serious criminal offense involving elements of false swearing, misrepresentation, fraud, misappropriation, or theft. Additionally, Kelley acted "willfully," meaning he acted intentionally and voluntarily violated a known legal duty. His intentional conduct involved dishonesty, deceit, and misrepresentation that seriously adversely reflects on his fitness to practice law.

Kelley argues that the government never claimed he owed any money in taxes, rather, that he was owed money by the United States Internal Revenue Service (IRS). Kelley contends that the record does not show his intent to violate the law. The elements required to convict for the filing of false tax returns are "(1) the defendant signed and filed a tax return *the defendant knew contained false information* as to a material matter, (2) the return contained a written declaration that it was being signed subject to the penalties of perjury, and (3) in filing the false tax return, *the defendant acted willfully*."

CP at 6 (emphasis added). Thus, regardless of whether Kelley owed money or was owed money, the only thing relevant here is that Kelley willfully filed his tax return knowing that it contained false information. Given the definition of willfully, it is clear that Kelley intended to violate the law when he filed his tax returns. Thus, the hearing officer properly determined that Kelley acted intentionally in violating the law when he filed his false tax returns.

*Actual or Potential Injury*

Kelley essentially argues that the conduct underlying his convictions has caused little to no harm since there were no victims who came forward. He claims that his clients who paid the reconveyance fees did not expect a refund and that the $31,144 in restitution ordered was low compared to the number of transactions that occurred over the course of his business dealings. He further argues that he did not owe the IRS money, rather, the IRS owed him money, and so no harm occurred by filing the false tax returns. ODC argues that the harm that occurred here involved harm primarily to the legal system and that actual harm is not required, the potential for harm is sufficient.

The *Standards* define "injury" as "'harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury.'" *In re Disciplinary Proc. Against Holcomb*, 162 Wn.2d 563, 585, 173 P.3d 898 (2007) (quoting STANDARDS, Definitions). "Potential injury" is defined as "'harm to a client, the public, the legal system or the

profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct.'" *Id*. (quoting STANDARDS, Definitions). Disbarment is appropriate when a lawyer knowingly engages in violative conduct with the intent to benefit himself or herself that causes serious or potentially serious injury to the client, public, or the legal system. STANDARDS, std. 7.1.

Kelley caused harm when he engaged in dishonest and deceitful conduct by possessing stolen money from his clients, making false declarations, and filing false income tax returns. This is evident from him having to pay restitution, even if some of his clients did not expect a refund, this is actual monetary harm to his clients. Furthermore, making false declarations in a deposition and on a declaration filed in court harms the legitimacy of our legal system. At the very least, Kelley created potential injury to the public and legal system by creating distrust in our institutions, especially since Kelley held positions of authority within our government. The conduct here supports a presumptive sanction of disbarment.

2. <u>The aggravating factors were properly applied and the mitigating factors do not warrant a departure from the presumptive sanction</u>

Applying *Standards* std. 9.22, the hearing officer found four aggravating factors: dishonest or selfish motive under *Standards* std. 9.22(b), multiple offenses under *Standards* std. 9.22(d), refusal to acknowledge wrongful nature of conduct under *Standards* std. 9.22(g), and substantial experience in the practice of law under *Standards* std. 9.22(i). Kelley challenges the aggravating factors.

*Dishonest or Selfish Motive*

The hearing officer determined that Kelley had a dishonest or selfish motive when he possessed stolen property and filed false income tax returns. Kelley argues that he never owed the IRS any money, but that he is still owed federal income taxes from the tax returns he was convicted for filing. He also argues that he charged the same fees to his clients as his competitors and that he took a pay cut when he began his work as a legislator and auditor. Further, he turned down over $20,000 tax-free per diem when he worked with the United States Army, the Washington National Guard, the Washington State Legislature, and the Washington State Auditor's Office.

This factor applies when a lawyer intended to benefit financially or deceive a court. *Holcomb*, 162 Wn.2d at 586-87; *Poole*, 156 Wn.2d at 224 (attorney intended to benefit by falsifying documents). Here, Kelley's possession and concealment of stolen property conviction involved possession of his clients' money that he knew to be stolen and taking it across state lines. Furthermore, filing five false tax returns misreporting one's income, even if Kelley owes no money to the IRS, can have other benefits, such as reducing income tax liability, as ODC points out. The hearing officer can draw reasonable inferences of motive. *Abele*, 184 Wn.2d at 25. It is reasonable to believe that Kelley committed these criminal acts with dishonest intent or for self-interested reasons. Thus, we conclude that the aggravating factor was properly applied.

*Refusal To Acknowledge Wrongful Nature of Conduct*

Kelley does not appear to challenge the aggravating factor of refusal to acknowledge the wrongful nature of conduct but states he is actively trying to correct the record. "An attorney may appear pro se in a disciplinary proceeding without automatically incurring the refusal-to-acknowledge-wrongful-nature-of-conduct factor." *In re Disciplinary Proc. Against Starczewski*, 177 Wn.2d 771, 793, 306 P.3d 905 (2013).

This factor applies when lawyers admit they engaged in the alleged conduct but deny it was wrongful or when they attempt to rationalize misconduct as error. *Abele*, 184 Wn.2d at 26. We have also held that the factor applies when attorneys fail to accept responsibility but instead seek to justify their conduct with insufficient explanations. *Id*. In *Abele*, this court held that the factor applied even though the attorney subject to discipline presented some evidence that she acknowledged the wrongful nature of her conduct. *Id*. This was due to her deposition testimony four months prior where she stated that she did not understand why the WSBA filed a complaint against her and also accused the judge of disliking her. *Id*. In another case, this court applied the aggravating factor when the lawyer expressed no remorse, appeared unrepentant, and rationalized her conduct by characterizing her violations as "unfortunate labeling." *In re Disciplinary Proc. Against Ferguson*, 170 Wn.2d 916, 945-46, 246 P.3d 1236 (2011).

Here, Kelley claims that he does not dispute the fact of his convictions; however, he attempts to rationalize his conduct. He claims that his business charged the exact same fees as his competitors, which was industry standard, and that his clients did not

16

expect to receive refunds of the fees he charged. Instead of acknowledging his wrongdoing, he argues that others were also committing the same wrongful conduct but only he is being punished for it. He also argues he did not knowingly intend to make a false statement when he denied personally mailing a letter on May 15, 2008, when he claims it was actually mailed on May 16, 2008, by his staff. Lastly, he argues that he did not knowingly intend to file a false tax return and claims proof of this is the fact that he does not owe the IRS money but, rather, he is owed money by the IRS. These are all attempts by Kelley to deny his conduct as wrongful and instead to justify it. Application of this aggravating factor is proper.

### Multiple Offenses

Kelley argues that his convictions are all based on the same conduct, specifically the same fee schedule, so this factor should not apply.[11] However, this factor "plainly applies where an attorney faces multiple counts of violating the RPCs." *Starczewski*, 177 Wn.2d at 792. Kelley was convicted of eight federal felonies, resulting in multiple violations of RPC 8.4(b), (c), and (i). This factor applies.

### Substantial Experience in the Practice of Law

The hearing officer determined that this factor applied but was not significant considering there was no evidence introduced in the record to demonstrate that Kelley

---

[11] In Kelley's opening brief, he requests that this court take judicial notice of any personal refinance or sales of property where there is still a mortgage in place. We decline to take judicial notice of this information because the information is not relevant. Kelley is attempting to prove a point by demonstrating that reconveyance fees, like those he charged, are industry practice, which is an attempt to attack his underlying conviction of possession and concealment of stolen property.

had experience practicing law in Washington.  Kelley acknowledges that the Board gave little weight to this factor.  ODC argues that this factor applies when a lawyer has 10 or more years of general experience at the time of the misconduct.  *Ferguson*, 170 Wn.2d at 942-43.  Kelley has been licensed in Washington since 2001, and ODC contends that during his disciplinary hearing, Kelley elicited testimony from his witness regarding his witness's knowledge of Kelley's "professional capacity as an attorney" and his work as a military lawyer over the past decade.  Verbatim Tr. of Proc. (Nov. 8, 2022) at 28-31.  While it is true that the application of this factor is proper, the Board was correct to give it little weight since Kelley has not been actively practicing the law in Washington since 2001.

*Mitigating Factors*

The hearing officer found that two mitigating factors applied: absence of a prior disciplinary record under *Standards* std. 9.32(a) and character or reputation under *Standards* std. 9.32(g).

Kelley argues that the Board erred by not giving enough weight to these mitigating factors.[12]  The Board should deviate from a presumptive sanction only if the aggravating and mitigating factors are sufficiently compelling to justify a departure.  *In re Disciplinary Proc. Against Smith*, 170 Wn.2d 721, 736-37, 246 P.3d 1224 (2011).  But even when there are several mitigating factors, such as absence of a prior record, the

---

[12] Kelley does not meaningfully argue this point, and his argument lacks citation to any authority.  This court is not required to search out authorities, rather, we "'may assume that counsel, after diligent search, has found none.'"  *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

attorney's misconduct may still justify imposition of the presumptive sanction. *Id.* It is true that Kelley has dedicated his life to public service and that his witness testified to his good character and trustworthiness, but considering the number of convictions, RPC violations, and aggravating factors, disbarment is still the proper sanction here.[13] *Rodriguez*, 177 Wn.2d at 889 (good character and a lack of a disciplinary record did not substantially mitigate ethical breaches at issue so as to justify departure from presumptive sanction for attorney who engaged in serious crimes of dishonesty).

Kelley asserts that additional mitigating factors should have been applied: restitution, recurrence, free disclosure to the Board, collateral consequences, rehabilitation, and his six-year suspension.

*Restitution*

Kelley argues that the Board should have considered that he paid the $31,144 restitution in full within weeks after he exhausted his direct appeals.

*Standards* std. 9.32(d) provides that "'timely good faith effort to make restitution or to rectify consequences of misconduct'" is a mitigating factor. *In re Disciplinary Proc. Against Preszler*, 169 Wn.2d 1, 28, 232 P.3d 1118 (2010) (quoting STANDARDS std. 9.32(d)). Good faith restitution occurs if "'made upon the lawyer's own initiative.'" *Id.* (quoting STANDARDS std. 9.3 cmt. at 50 (emphasis omitted)). "[R]estitution is not in

---

[13] Kelley argues his character and reputation justifies a departure from the presumptive sanction of disbarment. Kelley asserts that his 28 years dedicated to public service, 10 years in elected office, 15 years running a small nonprofit organization, several years of volunteer work with trade associations, and time spent coaching youth sports reflect good character and justify a departure from the presumptive sanction. However, he provides no time frames and fails to cite any evidence in the record for support. RAP 10.3(5), (6) (facts and arguments must be supported by references to the record).

good faith when [a] lawyer's ethical misconduct was knowing and yet the lawyer pays restitution only when a client demands it." *Id*. Here, Kelley did not pay restitution until after he exhausted his direct appeals. Moreover, restitution is a condition of his criminal sentence. Even if he did pay it before he was required to, restitution was still compelled by the court. *Standards* std. 9.4(a) specifically provides that forced or compelled restitution should not be considered as either an aggravating or mitigating factor. This factor does not apply.

### *Recurrence and Rehabilitation*

Kelley argues that he should be considered rehabilitated since the fees in question underlying his conviction have not been charged by him since June 2008, and that he is no longer engaged in the mortgage release business and will not be engaged in it in the future. The *Standards* discuss rehabilitation and recurrence as mitigating factors in the context of recovery from chemical dependency or mental disability. *See* STANDARDS std. 9.32(i)(3). Kelley cites no authority to support application of this factor to the facts here.

### *Full and Free Disclosure to the Board*

Kelley argues that he has been candid with ODC from the inception of this case in 2018, detailing how he planned to advocate for himself and quickly determining the undisputed facts. *Standards* std. 9.32(e) provides for this mitigating factor. This factor applies in situations where an attorney goes above and beyond the compliance requirement in a disciplinary proceeding. *In re Disciplinary Proc. Against Trejo*, 163 Wn.2d 701, 732, 185 P.3d 1160 (2008). The disciplined attorney's disclosure or

cooperation must surpass what is required from all attorneys. *Id*. Kelley cites to nothing in the record to demonstrate that he went above and beyond in disclosing and cooperating with the Board. This mitigating factor does not apply.

*Collateral Consequences and Kelley's Interim Sanction*

Kelley argues that the Board did not consider the collateral consequences resulting from his convictions that were inflicted on him and his family. He cites to facts outside the record such as bad press, a raid on his home, the inability to open a bank account, death threats, and harassment. The mitigating factor he seeks appears to fall under *Standards* std. 9.32(k), which provides that the imposition of other penalties or sanctions is a mitigating factor. This court has found that the collateral consequences of a criminal conviction, including negative publicity and a prison sentence, are insufficient to establish the application of this factor. *Vanderveen*, 166 Wn.2d at 615 (time on house arrest, adverse publicity as a result of conspiracy charges, monetary fines, and judicial censure are not the types of disciplinary sanctions that are usually credited as mitigating); *In re Disciplinary Proc. Against Perez-Pena*, 161 Wn.2d 820, 835-36, 168 P.3d 408 (2007) (municipal court punishment does not mitigate the sanction).

Kelley separately requests that his six-year interim suspension be treated as a mitigating factor. Disciplinary sanctions such as interim suspensions have been considered to be mitigating factors where the sanction imposed was suspension. *Vanderveen*, 166 Wn.2d at 615; *see In re Disciplinary Proc. Against Curran*, 115 Wn.2d 747, 774, 801 P.2d 962 (1990) (considering Curran's interim suspension as a mitigating

factor). However, Kelley cites no authority applying this factor in the context of disbarment and argues only that the hearing officer's decision to not consider it is "not consistent with the real world." Opening Br. of Appellant at 38.

ODC points out that this court has looked at an interim suspension as a way to justify reducing the length of a suspension to be imposed, but not as a mitigating factor justifying departure from presumptive disbarment. *See Curran*, 115 Wn.2d at 774 (reducing Curran's presumptive sanction of suspension by 18 months). ODC is correct, an interim suspension is not a mitigator for disbarment. The purpose of attorney discipline is to protect the public and deter other attorneys from similar misconduct. *In re Disciplinary Proc. Against Plumb*, 126 Wn.2d 334, 338, 892 P.2d 739 (1995). When the presumptive sanction is suspension and there has been a lengthy interim suspension, then the interim suspension itself has served the purpose of protecting the public. However, when the presumptive sanction is disbarment, one must affirmatively show fitness to reinstate their license to practice the law.

On balance, the number of convictions and RPC violations, the nature of the crimes and their reflection of dishonesty, and the aggravating and mitigating factors support disbarment.

3. Unanimity and proportionality

As the last step, Kelley argues this court must analyze two of the *Noble* factors, unanimity and proportionality, to determine the appropriate sanction. 100 Wn.2d 97-98. "The court will adopt the Board's recommended sanction unless the sanction is not

proportionate or the Board was not unanimous in its decision." *Dynan*, 152 Wn.2d at 623. Here, the Board voted 5-3 to disbar.[14] A unanimous decision receives the most deference; however, a lack of unanimity does not conclusively vitiate the deference we give to the Board's recommendation. *In re Disciplinary Proc. Against Van Camp*, 171 Wn.2d 781, 815, 257 P.3d 599 (2011). Next, we consider proportionality.

When determining if a sanction is proportionate, we look at whether it is "'roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability.'" *Dynan*, 152 Wn.2d at 623 (internal quotation marks omitted) (quoting *In re Disciplinary Proc. Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000)). A party can submit comparative cases for consideration to demonstrate that the sanction is disproportionate to other cases involving similar conduct. *Whitt*, 149 Wn.2d at 717. Kelley carries the burden of demonstrating that disbarment is disproportionate. *In re Disciplinary Proc. Against Cottingham*, 191 Wn.2d 450, 470, 423 P.3d 818 (2018). Kelley has cited no cases to challenge the Board's recommended sanction, and, thus, we presume that it is proportional. *Perez-Pena*, 161 Wn.2d at 837.

Instead, Kelley refers without any citations to the former governor of Alabama who was convicted seven times, sentenced to seven years in prison, and is still a member

---

[14] Three dissenting Board members voted against the disbarment recommendation and one of the three voted to reject the findings of fact and conclusions of law. Neither the Board nor the dissenters explained the basis for their positions. Kelley argues that a written dissent was required in accordance with ELC 11.12(e). However, ELC 11.12(e) requires only that the Board issue a "written order or opinion." The Board did so, it simply did not state its reasons, nor was it required to under the rule. The Board is required only to state its reasoning when it amends, modifies, or reverses any finding or conclusion or recommendation of the hearing officer. *Id*. A dissenting Board member "may set forth in writing the reasons for that dissent." *Id*. This is an optional, not a mandatory, requirement.

of the Alabama State Bar. He also references former WSBA president Robin Haynes, who was allowed to become an inactive member of the bar after she pleaded guilty to stealing money from two law firms and from the WSBA. However, Haynes was disbarred in Idaho, and WSBA recommended reciprocal discipline of disbarment be imposed. Kelley argues that WSBA's initial decision to not impose discipline after Haynes stole law firm or client money and public bar funds means he should similarly not be disbarred. We find the unsubstantiated references to the governor of Alabama and to former president Haynes unpersuasive.

"We have long been committed to the policy that conviction of a felony begets disbarment." *In re Disciplinary Proc. Against Krogh*, 85 Wn.2d 462, 487, 536 P.2d 578 (1975) (Wright, J., concurring). Case law supports disbarment as the proper sanction here. *Vanderveen*, 166 Wn.2d at 612 (disbarment was appropriate for attorney who was convicted of a federal felony for not reporting receipts of more than $10,000 in one transaction in connection with a trade or business); *In re Disciplinary Proc. Against Fossedal*, 189 Wn.2d 222, 241, 399 P.3d 1169 (2017) (disbarment was appropriate for attorney who stole client's settlement funds and was in a position of trust); *Smith*, 170 Wn.2d at 735-36 (disbarment was appropriate for attorney based on federal conspiracy to commit securities and wire fraud conviction); *In re Disciplinary Proc. Against McGrath*, 178 Wn.2d 280, 307, 308 P.3d 615 (2013) (disbarment was appropriate for attorney who made false statements and claims, intentionally filed false and misleading claims in a bankruptcy proceeding, and deposited personal and client funds in trust account); *In re*

*Disciplinary Proc. Against Cramer*, 168 Wn.2d 220, 237, 225 P.3d 881 (2010) (disbarment was appropriate for attorney's criminal acts in attempting to circumvent state tax law). Kelley does not meet the burden of demonstrating sufficient cases to show that disbarment would be disproportionate. We adopt the Board's recommendation and impose disbarment as the sanction for Kelley's misconduct.

CONCLUSION

The presumptive sanction for all counts against Kelley is disbarment. Considering the eight federal felony convictions and four aggravating factors, Kelley's mitigating factors are not sufficient to warrant a departure from the presumptive sanction. Kelley fails to demonstrate that disbarment is a disproportionate sanction. We adopt the Board's recommendation to disbar Kelley from the practice of law.

Madsen, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.